1. ELECTIONS—BALLOTS—EMBLEMS.

Where the state convention of the Democratic party met and made nominations and adopted an emblem, and the county convention of the same party met and made nominations for county officers and adopted a different emblem, and because the county emblem was different from the state, the secretary of state and county clerk refused to print it on the ballot, and the ballot was printed with the words Democratic ticket at the head in two places, and opposite one the emblem adopted by the state convention, and the word Democrat was printed opposite the county nominees as well as opposite the state nominees, and instructions were sent to all the precincts in the county that a cross opposite the emblem adopted by the state convention would count as a vote for the county Democratic nominees; ballots voted with a cross opposite the emblem were properly counted for the county Democratic nominees.

2. ELECTIONS—MISTAKE IN BALLOT—ESTOPPEL.

If the county clerk makes a mistake in designating a candidate on the ballot as the nominee of a political party represented by an emblem, and the opposing candidate having notice of such mistake in time to have the mistake corrected, he will not be permitted to lie by and allow voters to be misled thereby, and afterwards take advantage of such defect to defeat the expressed will of a majority of the voters.

*Appeal from the County Court of Lincoln County.*

Mr. T. J. EDWARDS and Messrs. WELLS, TAYLOR & TAYLOR, for appellant.

Messrs. TALBOT, DENISON & WADLEY, for appellee.

MR. JUSTICE GODDARD delivered the opinion of the court.

At the election held on November 2, 1897, George D. Freed, contestee, was a nominee of the Democratic party of Lincoln county, for the office of treasurer; and John P. Dickinson, contestor, was a candidate for this office on the

Republican ticket. Upon a canvass of the vote it was found
by the board of canvassers that Dickinson had received 156,
and Freed 190, of the votes cast; and Freed was declared
elected. Thereupon Dickinson instituted this proceeding in
the county court of Lincoln county, to contest the right of
Freed to the office, upon the ground that the judges of elec-
tion counted, and the board of canvassers canvassed, sixty-
two votes for Freed to which he was not entitled. It appeared
upon the trial that the state convention of the Democratic
party nominated a candidate for judge of the supreme court,
and chose as its emblem the rooster and a bust of William J.
Bryan; that the county convention of the Democratic party
which nominated Freed adopted as its emblem a rooster. The
secretary of state refused to allow the use of the emblem
selected by this convention because it had been previously
selected by the state convention; and in certifying the list
of nominations to the county clerk of Lincoln county, in-
cluded as the only emblem of the Democratic party the
rooster and bust of Bryan. On the official ballot, as printed,
the words "Democratic Party" occurred twice, once on the
fifth line from the top, having as an emblem the rooster and
bust of Bryan; and the other on the twelfth line, with no
emblem whatever. Opposite the name of contestee the word
"Democrat" was added, thereby designating the party by
which he was nominated, as provided in section 18 of the
"Act in relation to elections," as amended in 1894. It also
appeared that the county clerk prepared and printed the bal-
lot in this form, leaving off the emblem adopted by the county
convention because of the action of the secretary of state, and
of an opinion of the attorney general recently theretofore
published, to the effect that the emblem adopted by the state
Democratic convention was the official emblem of the party,
and should be recognized as such, notwithstanding any action
taken by subordinate conventions of the party; and with the
understanding that their nominees were represented by such
emblem, and that a cross placed opposite to it would vote the
entire state, county and precinct nominations of the Demo-

cratic party; that he informed the contestee and other nominees upon the Democratic ticket that he had left the rooster emblem off of the ticket for these reasons, and that a cross opposite the words "Democratic Party" and the emblem of the rooster and bust of Bryan would result as above stated.

It further appears that, in pursuance of the information given them by the county clerk, the contestee and others sent instructions to all the precincts in the county that a cross marked in the space opposite the bust of Bryan and rooster would vote for every candidate on the ballot nominated by the Democratic party. It is admitted that sixty-two of the ballots thus marked were counted for the contestee, thus giving him a majority of thirty-four votes over the contestor. While the statement of contestor specifies as grounds of contest the casting and counting of illegal votes in favor of contestee, and the rejection of legal votes offered for the contestor, upon the trial these grounds of complaint were withdrawn, and the contestor stood upon the sole proposition that "legal votes, votes of qualified electors in the county were counted for contestee when in fact and in law they were not cast for him for this office." In other words, that the sixty-two ballots in question, although cast by legal voters, should be rejected because, as a matter of fact, the emblem marked thereon had not been adopted by the Democratic convention of Lincoln county, notwithstanding upon the face of the ballot, as prepared and printed by the clerk, the emblem appeared opposite the name "Democratic Party;" and the contestee, in the body of the ballot, was designated as a nominee of that party.

As we have seen, the words "Democratic Party" appeared twice at the top of the ballot, with this emblem opposite one of these party names, while in the body of the ballot is added the word "Democrat" opposite the name of contestee. The same designation appears opposite the name of supreme judge and district attorney, in regard to both of whom it is conceded that the designation was sufficient to inform the voter that they were among the list of nominations represented by

the emblem, and could be voted for by marking a cross oppo-site thereto, and in fact were so voted for by these identical ballots. From the face of the ballots, therefore, the voters might well have understood that contestee, as a nominee of the Democratic party, was represented by the emblem, and could be voted for in like manner.

In addition to this it is shown that the voters throughout the various precincts were instructed that a mark placed opposite this emblem would be counted as a vote for con-testee and his conominees, for county officers on the Demo-cratic ticket. These facts, when viewed in the light of the interest that the voter natually takes in the administration of home affairs, and in the selection of persons to fill the local offices, leaves no doubt of the intention of the voters who cast these ballots to vote for the contestee.

If it be conceded, therefore, as claimed by contestor, that the nominees of a subordinate convention are not entitled to the emblem adopted by the state convention of a party, with-out expressly adopting the same, and that the clerk erred in designating contestee as a nominee of the convention of the party to which the emblem belonged, it by no means follows that the ballots in question were not correctly canvassed and counted for him. As was said in *Young v. Simpson*, 21 Colo. 460:

" The principal object of the rules of procedure prescribed by statute for conducting an election is to protect the voter in his constitutional right to vote in secret; to prevent fraud in balloting and secure a fair count. Such rules are usually held to be directory as distinguished from mandatory, and un-less the statute declares that a strict compliance is essential in order to have the ballot counted, the courts will not undertake to disfranchise any voter by rejecting his ballot, where his choice can be gathered from the ballot when viewed in the light of the circumstances surrounding the election."

Without determining the question whether the county clerk erred in designating the contestee as the nominee of the con-vention of the party to which the emblem belonged, it is suffi-

cient to say that the mistake, if it was one, was known to the contestor and his conominees on the Republican ticket several days preceding the election, and in ample time to have had the mistake corrected ; and under the doctrine announced in the case of *Allen v. Glynn*, 17 Colo. 338, they should have availed themselves of such objection in seasonable time ; and will not be permitted to lie by and allow voters to be misled thereby, and afterwards take advantage of such defect, and defeat the expressed will of a majority of the voters, as here attempted. We adopt the language as quoted in that case from *Kellogg v. Hickman*, 12 Colo. 256, as peculiarly applicable to this case :

" To overthrow the expressed will of a large number of voters for no fault of theirs, as we are asked to do, would be to defeat the purpose of all election laws, which is to obtain a full and fair expression of the wishes of the voters."

We are satisfied that the judgment of the court below is correct, and should be affirmed ; which is accordingly done.

*Affirmed.*

Campbell, C. J., concurring specially.

While much impressed with the argument of counsel for contestor that the ruling of the trial court virtually ignores sections of the statute, in form mandatory, and is based upon a construction which may permit votes to be cast in disregard of the express directions of the statute, and to be counted for a candidate for whom the voters did not intend to cast their ballots, still, the decision of this court in *Allen v. Glynn*, 17 Colo. 338, if followed, sanctions the action of the county court.

From the majority opinion in that case it would seem that the failure of the opposing candidate seasonably, and prior to the election, to object to the certifying and printing of an im proper ticket on the official ballot, whose presence there re sults in the alleged thwarting of the voters' will, estops the unsuccessful candidate, after the election, to take advantage of

such mistake. Were the question *res nova* in this jurisdiction, I should, to say the least, long hesitate to adopt the views of the majority on this particular point, for the reasons so cogently expressed by Mr. Justice Helm in his dissenting opinion.

I may, in addition, say that while it should always be the aim of the courts to give full expression to the voters' will, it is equally desirable to prevent fraud and secure a fair count. Moreover, it is apparent, to my mind, that the unseemly controversies under the Australian ballot act that have already sprung up, and will probably continue to incumber our court dockets, are the legitimate outgrowth of a looseness of construction of its provisions in which the legislature never intended the courts to indulge, even in their laudable zeal to ascertain and give effect to the electors' will. Indeed, this desirable object can better be effectuated by an insistence upon a compliance with prescribed statutory conditions than by indulging in what is more or less an unrestrained speculation in each case that comes before the courts. But if the rule of *stare decisis* should ever be rigidly adhered to, it is in election controversies; for in no class of cases, and for reasons apparent to any candid mind, are there stronger reasons for the strict application of the rule.

Believing, as I do, that a previous decision of this court, followed by courts in many of our sister states, is against the contentions of contestor, and further conceding that in the record, as certified up, effect seems to have been given to the will of the electors in casting the ballots in controversy, I vote for an affirmance of the judgment.