Note.—See under (1) 7 C. J. p. 751 §548; anno. 1 L. R. A. (N. S.) 252; 3 R. C. L. p. 554; 1 R. C. L. Supp. p. 853; 5 R. C. L. Supp. p. 183. (2) 7 C. J. p. 751 §548. (3) 7 C. J. p. 751 §548; anno. L. R. A. 1916C, 77; 26 A. L. R. 11; 26 R. C. L. p. 1357; 5 R. C. L. Supp. p. 1451. (4) 7 C. J. p. 615 §277. (5) 7 C. J. p. 752 §548.

---

**COBB et al. v. WHITNEY, Trustee, et al.**

No. 16083—Opinion Filed Dec. 21, 1926.

Rehearing Denied April 26, 1927.

**1. Frauds, Statute of—Sufficiency of Writing to Convey Real Estate.**

Where J. B. is vested with the legal title to real estate in trust for T. S., and T. S. directs J. B. to convey the legal title to J. H., and it is admitted by T. S. and J.B. that a one-half interest to the lands was granted to J. H. as a gift from T. S., and that J. H. was to hold the legal title to the remaining one-half in trust for T. S., the execution of the deed of conveyance by J. B. under the direction of T. S. and its delivery to J. H. by the act of T. S. in filing the deed for record in the office of the county clerk. there is a compliance with section 5240, C. O. S. 1921, requiring conveyances relating to real estate to be in writing, * * * subscribed by the grantor.

**2. Same—Gift of Interest in Land.**

Where T. S. and J. H., as joint owners

of an interest in land, cause the legal title to be vested in J. H., who holds as trustee of the interest of T. S., and J. H. thereafter claims ownership to the entire tract of land through subsequent gift of T. S., such conveyance from T. S. to J. H. must be evidenced by writing under section 5240, C. O. S. 1921.

3. **Trusts—Adverse Interest Acquired by Trustee Inuring to Benefit of Cestui Que Trust.**

As a general rule, a trustee will not be allowed to acquire an interest adverse to the trust, and when he does purchase, in his own name, any interest in or claim against the estate of the cestui que trust, or any other interest in the trust property, such purchase will be held to inure to the benefit of the cestui que trust.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Seminole County: Geo. C. Crump, Judge.

See, also, 124 Okla. 194, 255 Pac. 577.

Action to declare a trust and to quiet title brought by E. W. Whitney, trustee of the estate of T. S. Cobb, a bankrupt, and another against James H. Cobb and others, in which named defendant filed cross-petition against B. Olson and others. Judgment for plaintiffs, and defendants James H. Cobb and another appeal and plaintiffs file cross-appeal. Affirmed in part, and in part reversed and remanded, with directions.

C. Guy Cutlip and Thos. J. Horsley, for plaintiffs in error.

C. Dale Wolfe, for defendants in error.

Opinion by RUTH, C.    It appears that in 1922, one T. S. Cobb was adjudged a bankrupt, and E. W. Whitney was appointed trustee in bankruptcy of the estate of T. S. Cobb, and as such trustee, Whitney brings action praying T. S. Cobb be declared to be the owner in fee simple of an undivided one-third interest in fee simple to certain lands, and a one-half interest in all oil, gas, and minerals and rights thereto in and under the remaining two-thirds of the land mentioned in the petition, and further prays E. W. Cobb be required to convey to plaintiffs the undivided one-third interest to said lands which he holds in trust for T. S. Cobb, and that B. Olson be required to convey to plaintiff an undivided one-half interest in all the oil, gas, and minerals and rights thereto, under the remaining two-thirds of the lands. Plaintiff, after alleging B. Olson, E. W. Cobb and his wife executed an oil and gas lease on the lands for a period of five years

to E. L. Harris, who in turn assigned the same to M. N. Dye, prays that plaintiff have and recover of the defendants one-half the actual consideration paid for the oil and gas lease on the two-thirds of the said lands. B. Olson appeared and moved to quash the summons as to her, which motion was by the court overruled, and as she made no further appearance, any judgment rendered as to her is final.

M. N. Dye answered that she was an innocent purchaser for value, and that she had paid the purchase price, except $450, which was deposited in escrow in the Farmers National Bank of Wewoka, and prays her interests be protected. E. W. Cobb answered by general denial.

James H. Cobb answered by general denial, and further that, in an action by B. Olson v. James H. Cobb and T. S. Cobb, the said T. S. Cobb disclaimed any interest in the lands in controversy, and judgment was entered accordingly. J. H. Cobb for cross-petition against B. Olson alleges he is the owner of an undivided one-half of the mineral rights, and B. Olson holds the lands as trustee for J. H. Cobb, and attaches a copy of an agreement executed by B. Olson, in support of his cross-petition. J. H. Cobb files his cross-petition against E. W. Cobb alleging cross-petitioner took title to the lands in the name of E. W. Cobb, who holds for him as trustee. J. H. Cobb files his cross-petition against M. N. Dye, alleging cross-petitioner is entitled to the $450 now placed in escrow as hereinbefore stated, the said sum being a part of the purchase price of the mineral leases on the land. A receivership was prayed for, but denied by the court, but all money received as rents was directed to be turned over to the court clerk of Seminole county.

E. L. Harris, for answer, disclaims any interest in the lands, averring that he received the oil and gas lease from E. W. Cobb for the use of J. H. Cobb, and with the knowledge and consent of J. H. Cobb, he transferred or assigned the lease to Alexander Marshall, and the purchase price was paid, except the escrow money heretofore referred to, and prays the action be dismissed as to him.

The cause was tried to the court, and findings of facts made as follows:

"That B. Olson is the owner of an undivided two-thirds interest in the surface and an undivided one-fourth interest in the royalty, oil, gas and mineral rights.

"That T. S. Cobb owns an undivided one-

sixth interest in the surface and an undivided one-fourth interest in the royalty, gas and oil rentals and mineral rights.

"That there is a sum of $725 that should be divided between J. H. Cobb and T. S. Cobb.

"That T. S. Cobb is entitled to $360.50 of the $450 in escrow in the Farmers National Bank and J. H. Cobb is entitled to the remainder.

"That of the $200 deposited 'in there' T. S. Cobb is entitled to $50, J. H. Cobb is entitled to $50, and B. Olson is entitled to $100.

"That the contract executed by E. L. Harris is of full force and effect and M. N. Dye is an innocent purchaser for value."

Judgment was rendered decreeing E. W. Whitney, trustee of the estate of T. S. Cobb, entitled to the immediate possession of the fee in and to the one-sixth undivided interest in and to the lands involved, and is owner of an undivided one-fourth interest in and to all the oil, gas, and mineral rights in, to, and under the remaining two-thirds hereinafter decreed to B. Olson; that E. W. Cobb holds in trust for T. S. Cobb the fee simple title to a one-sixth interest, and decrees conveyance of same to Whitney, trustee; that B. Olson holds in trust for T. S. Cobb an undivided one-fourth interest in and to the oil, gas, and mineral rights in the remaining two-thirds; that Whitney recover $362.50 of the $450 placed in escrow in the bank; that J. H. Cobb is the owner of a one-sixth interest in fee simple; and that said title is held in trust for him by E. W. Cobb, and J. H. Cobb is the owner of an undivided one-fourth interest in the gas, oil, and mineral rights in the remaining two-thirds; that J. H. Cobb is entitled to $87.50 of the money placed in escrow and J. H. Cobb is taxed with cost of the action; that B. Olson is the owner of an undivided two-thirds interest in the lands, subject to the ownership of one-half of all oil, gas, and mineral rights thereby by **"plaintiff and defendant J. H. Cobb, as aforesaid."** E. W. Cobb is decreed to be a trustee of a one-third interest for J. H. Cobb, and E. L. Harris is discharged.

Plaintiffs and defendant J. H. Cobb filed motions for a new trial, and upon the several motions being overruled, plaintiffs and defendant J. H. Cobb appeal.

The original allottee of this land sold the same to T. S. Cobb in 1908, and T. S. had the land conveyed, not to himself, but to a brother, Joe B. Cobb. In 1911, T. S. had J. B. convey the land to another brother, James H. Cobb, who was a lawyer, as was T. S. Cobb, and T. S. and J. H. formed a law partnership, and T. S. Cobb testifies he thus gave to his younger brother, J. H. Cobb, a half interest in the land, and this gift being evidenced by a deed duly executed by Joe B. Cobb at the special instance and request of T. S. Cobb, and T. S. having in person placed this deed of record in the clerk's office, J. H. Cobb became owner of an undivided one-half interest of the land, and such gift was not subject to revocation by T. S. Cobb, and we do not understand T. S. ever claimed thereafter that J. H. was not such owner of a one-half interest, and T. S. Cobb not being indebted at the time of the conveyance, the same cannot be attacked by the trustees in bankruptcy, some 12 or 13 years after such transfer was made and recorded, and T. S. Cobb is estopped from claiming more than a one-half interest in the land, and J. H. Cobb held title to the land, being an undivided one-half interest in his own right and one-half interest as trustee for T. S. Cobb, and the gift to J. H. Cobb being duly evidenced by deed duly executed and placed of record, and the evidence clearly proving T. S. Cobb intended it as a gift, T. S. Cobb is estopped from claiming all the property was held in trust for him by J. H. Cobb.

At the time of this conveyance, the land was "wild land" and of little value for any purpose. Subsequently one Smith, the father-in-law of T. S. Cobb, conceived a wild scheme of laying out a town site thereon, by dividing the land into lots and blocks and selling them to persons in the east, and Smith agreed to give T. S. Cobb one dollar for each lot sold, and pursuant to this agreement Smith subsequently paid T. S. Cobb $160, and gave him a due bill for $1,274. Smith agreed to pay the taxes, which he failed to do, and the lands were sold to B. Olson for taxes and tax deeds issued to Olson. T. S. Cobb instructed J. H. Cobb to execute deeds to the lots as they were sold by Smith.

B. Olson, holder of the tax deeds, brought an action against J. H. Cobb and the purchasers of the lots, praying her title be quieted, and T. S. Cobb in such action filed his disclaimer, in which he disclaims any interest in the land. B. Olson executed a written agreement wherein she agreed to pay all taxes due, and in the event her title was quieted she agrees to convey to J. H. Cobb an undivided one-third interest in the fee simple title and in the event an opportunity is afforded to lease the land for

oil and gas, Olson agrees that all profits arising from the lease shall be divided equally between herself and J. H. Cobb, or if desired by Cobb, she will convey by a proper conveyance a one-half interest in the oil and gas leases to J. H. Cobb on the remaining two-thirds interest, in which she retains the fee simple title. This agreement was duly executed January 9, 1917, and title was quieted by decree of the court in B. Olson. Thereafter, B. Olson conveyed a one-third interest in the fee to M. S. Youngblood at the request of J. H. Cobb. Youngblood then conveyed by deed, the one-third interest to E. W. Cobb, a brother of T. S. and J. H. Cobb. T. S. testifies he never received any consideration for these transfers, and J. H. in the presence of E. W. told T. S. that "Youngblood was holding title for us (J. H. and T. S.)."

On March 4, 1922, B. Olson, J. H. Cobb, and Erna Cobb, his wife, executed an oil and gas lease on all the lands to E. L. Harris for a consideration of $200 cash and a one-eighth royalty. T. S. Cobb testified that at the time Olson's title was quieted, this 200 acres of land was worth about $800 or $1,000. E. L. Harris, as trustee for J. H. Cobb, testified he sold the oil and gas lease to M. N. Dye for $1,950, and deposited $1,500 in bank to J. H. Cobb's credit, and $450 in escrow against any flaw in the title. E. W. Cobb testified J. H. Cobb had Youngblood deed to E. W. Cobb the fee J. H. had in the land, and E. W. has no interest therein, but holds as trustee for the true owner, whoever that may be.

It appears that along in 1917, when these transfers were being made, T. S. Cobb had suffered a stroke of paralysis, and was for a long period wholly incapacitated from transacting any business, and had placed all his matters under the control of J. H. Cobb, and when the matter of the B. Olson suit to quiet title came up, J. H. consulted with T. S., and J. H. Cobb testified T. S. Cobb said:

"I have had enough trouble with the damn land. The taxes are very heavy, and if you can get anything out of it, you can have whatever you get."

This was denied by T. S. Cobb. It is upon this evidence and the fact that T. S. Cobb filed a disclaimer in the action of B. Olson v. J. H. Cobb et al., that J. H. Cobb now claims to be the owner of all T. S. Cobb's interest in the fee, and in the oil, gas, and mineral rights. Witness testified that he never paid T. S. Cobb one dollar for his interests. We are of opinion that the expressions ascribed to T. S. Cobb, even though they had not been denied by T. S. Cobb, were insufficient to transfer an interest in real estate, and take the alleged gift out of the statute of frauds.

After T. S. Cobb is alleged to have made use of the expressions ascribed to him, J. H. Cobb says he considered all the interests of T. S. Cobb as belonging to him. J. H., "by gift and abandonment."

Section 5240, C. O. S. 1921, provides:

"No deed, mortgage, or other conveyance relating to real estate, or any interest therein. * * * shall be valid until reduced to writing and subscribed by the grantors."

If this was a gift or a promise to make a gift, it lacked consideration and was unenforceable. 3 C. J. 321; Louthan v. Johnson, 111 Okla. 170, 239 Pac. 173; Denver Pressed Brick Co. v. Lefevre, 25 Colo. 304.

J. H. Cobb then testified he paid B. Olson $100 to execute an oil lease in the name of Harris, who testifies he, Harris, did not pay anything therefor, and at the request of J. H., he, Harris, assigned the lease to M. N. Dye for $1,950, and $1,500 of this was deposited in the bank to the credit of J. H. Cobb and $450 was deposited in escrow.

In Pomeroy's Equity Juris., section 1052, it is said:

"The doctrine may be stated that, in its most general form, whenever a trustee or person clothed with any fiduciary character takes advantage of the relation, and by means of it acquires the title or use of the trust property, or makes a profit or advantage to himself out of the trust and confidence, then a constructive trust is impressed upon such property, profits or proceeds in his hands, in favor of the original beneficiary. The following are some of the most important applications of this doctrine: When a trustee, administrator, agent, attorney, or other fiduciary person, without the knowledge or consent of his beneficiary, purchases the trust property at a public or private sale; or when, by taking advantage of the trust reposed, and of the superiority conferred upon him by the relation, he unconscientiously acquires title to the trust property by purchase or gift directly from the beneficiary; or when he uses the trust property for his own benefit, or in his own business, and by means of such use obtains additional gains and profits, in these and all similar cases equity impresses a constructive trust upon the property purchased or obtained, and upon the profits and acquisitions so made, for the benefit of the party beneficially entitled. This form of constructive trust embraces many particular instances, and the principle is extended to all abuses of

confidence, whereby one in whom the confidence is reposed obtains an advantage."

And in section 1058, the same author announces the rule:

"Every act of the trustee in holding, managing, investing, or otherwise dealing with the trust property as though he could retain it, is itself a violation of his paramount obligation to the beneficiary. If the trustee refuses or delays to convey the property to its beneficial owner, and retains it, derives benefit from its use, and appropriates its rents, profits, income, he must account for all he thus receives, and pay over the amount found to be due the cestui que trust, as well as convey to him the corpus of the trust fund. The beneficiary, therefore, being the true owner, may always, by means of an equitable suit, compel the trustee to convey or assign the corpus of the trust property, and to account for and pay over the rents, profits, issues, and incomes which he has actually received, or, in general, which he might with the exercise of reasonable care and diligence have received. In such a suit the plaintiff is also entitled to any additional or auxiliary remedy, such as injunction, cancellation, accounting, which may be necessary to render his final relief fully efficient. No change in the form of the trust property, effected by the trustee, will impede the rights of the beneficial owner to reach it and to compel its transfer."

And in 39 Cyc. 366, 5, the rule is announced as follows:

"The law does not stop to inquire into the fairness of the sale or the adequacy of the price, but stamps its disapproval upon the transaction which creates a conflict between self interest and the integrity of the trustee. The rule embraces not only direct purchases but also indirect purchases through third persons, and applies regardless of whether the sale is private or under decree, or whether the cestui que trust is an infant or an adult."

Again, the rule is announced in 29 Cyc. 298, as follows:

"It is a general principle that a trustee will not be allowed to acquire an interest adverse to the trust, and that when he does purchase, in his own name, an outstanding title, incumbrance, or claim against the estate of his cestui que trust, or any other interest in the trust property, such purchase will be held to inure to the benefit of the cestui que trust."

One of the most salutary principles of chancery jurisprudence is that it, strictly speaking, has no immutable rules. It lights its own pathway; it blazes its own trail; it paves its own highway; it is an appeal to the conscience of the chancellor. It had its origin in the breast of the kings, who upon complaint of one of the king's subjects who found he had no plain, adequate, and complete remedy at law, appealed to his king, who thereupon instructed an ecclesiastic, the keeper of the king's conscience, to make an investigation, and regardless of the narrow and technical rules of law, mete out equal and exact justice. The Lord Chancellor became the head of these ecclesiastical or chancery courts, and thus the jurisdiction of courts of equity rests upon the fundamental principles of right and fair dealing; its creed is justice between man and man; its object is not punishment; its remedies are not penal; its mission is to protect the innocent and blameless.

This is not the first action between these brothers that has reached this court (Cobb v. Whitney, 124 Okla. 194, 255 Pac. 577 wherein J. H. Cobb claimed to be sole owner of the home erected and occupied by T. S. Cobb for years because T. S. Cobb had conveyed it to J. H. The record discloses the following state of facts: T. S. Cobb, a lawyer, who had served as a judge of the courts of this state, takes his younger brother, J. H., when he is admitted to the bar, and makes him a full partner in his established practice. T. S. is afterwards stricken with paralysis and is helpless in the hospital for months, and for years afterwards is unable to travel the distance from his home to his office, so he moves "down town," either living in, or in close proximity, to his offices, and gives up his home to the younger brother and his family. The elder brother, being unable for a long time to transact any business, conveys and has his trustee convey by deed, all of his real property to his younger brother. After a partial recovery, believing J. H., his younger brother, is dissipating the estate, he attempts to effect a settlement. Failing in this, he files a voluntary petition in bankruptcy, and the court appoints a trustee in bankruptcy, who is the personal selection of T. S. Cobb, and this action is the result of an effort on the part of T. S. Cobb to preserve his share of the estate. If there ever was an action appealing to the conscience of a chancellor, it is this action. If there ever was a trusteeship, in which the trustee owed illimitable and unstinted devotion and loyalty to his cestui que trust, it reveals itself in this action. By his act of transferring, or having transferred by deed, all his real property to J. H. Cobb, with the understanding that T. S. Cobb should be equitable owner of an undivided one-half interest in the lands, and upon full consideration of the record in this

case, we are of opinion that the trustee character of J. H. Cobb continued through all transactions with reference to the lands, or rents, issues, or profits, arising therefrom.

The record discloses that J. H. Cobb received the following sums of money from this land, to wit, oil lease, $1,500; rent of lands $310, which, after deducting the two-thirds interest of B. Olson therein, left a balance of $103.34, or a net total received of $1,603.34; that J. H. Cobb has paid taxes on the land in the sum of $147.56, of which two-thirds was due from B. Olson, which we assume J. H. Cobb deducted from the rents due B. Olson, leaving a net expenditure by J. H. Cobb for taxes in the sum of $49, to which he is entitled to a credit, leaving a net balance in the hands of J. H. Cobb of $1,554.34; that T. S. Cobb has received of Smith, from the sale of lots, the sum of $160, and under the original agreement between T. S. and J. H. Cobb, said J. H. Cobb is entitled to deduct a like sum from the moneys received by him, leaving a balance of $1,390.34 to be equally distributed between T. S. Cobb and J. H. Cobb.

The judgment of the trial court will therefore be affirmed in so far as it decreed M. N. Dye to be an an innocent purchaser and the owner of the oil, gas and mineral lease.

The judgment of the trial court is affirmed in so far as B. Olson is decreed to be the owner of an undivided two-thirds interest of the fee, and the owner of an undivided one-half interest in the royalty oil and gas of such two-thirds interest. The judgment of the trial court is affirmed in so far as it decrees J. H. Cobb and J. S. Cobb each to be an owner of a one-half interest in fee of the undivided one-third interest conveyed by deed to E. W. Cobb as trustee for J. H. Cobb, and E. W. Cobb shall be directed to make the proper conveyances to effectuate the judgment.

The judgment of the court decreeing T. S. Cobb to be the owner of a one-fourth interest in the royalty oil and gas is affirmed, and J. H. Cobb, E. W. Cobb, and B. Olson are directed to make the proper conveyances to effectuate the judgment.

The judgment of the trial court is affirmed in so far as it decrees the trustee in bankruptcy. E. W. Whitney, is entitled to immediate possession of all the interests of T. S. Cobb, bankrupt.

The judgment of the trial court is reversed in so far as its findings of the amounts due T. S. Cobb are involved, and this cause is remanded with directions to enter judgment in favor of E. W. Whitney, trustee of the estate of T. S. Cobb, bankrupt in the sum of $697.17, being 50 per cent. of the sum retained by J. H. Cobb after making all proper deductions, and with further directions to enter judgment decreeing J. H. Cobb and T. S. Cobb each entitled to a one-half interest in the money placed in the Farmers National Bank of Wewoka in escrow, when distribution, if any, is made of the same, and the trial court is directed to make necessary orders and decrees to fully put into effect the judgments of this court as herein rendered.

This cause having been considered and an opinion written herein by Commissioner Jones, wherein the judgment of the trial court in all matters affirmed (not officially reported, vol. 39, Okla. App. Court Rep. 295), and defendants and cross-petitioners having duly filed their petition for rehearing, the same has been considered and a rehearing granted.

It further appearing that prior to the consideration of the petition for a rehearing by this court, Jones, Commissioner, wrote an opinion (vol. 40, Okla. App. Court Rep. 291, not officially reported), in which the judgment of the trial court was affirmed, the opinions are herewith withdrawn, and this opinion substituted as the opinion in this case.

By the Court: It is so ordered.

Note.—See under (1) 39 Cyc. p. 365. (2) 27 C. J. p. 202, §151; p. 208, §169; 28 C. J. p. 655, §56. (3) 39 Cyc. p. 298.