## HENDRICHS v. MORGAN.

(Circuit Court of Appeals, Ninth Circuit. February 1, 1909.)

### No. 1,626.

TRUSTS (§ 63½*)—AGREEMENT TO ACQUIRE MINING CLAIMS—VALIDITY—STATUTE OF FRAUDS.

A verbal agreement between two parties to acquire the ownership of a mining claim by location on joint account, pursuant to which they stake the claim, mark the boundaries, and do the necessary development work together, each contributing one-half the expense, the location being made in the name of one, although it does not create a partnership where the agreement does not extend to working the claim, is not within the statute of frauds, but a resulting trust is imposed on the one holding the title in favor of the other to the extent of his half of the claim.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 93; Dec. Dig. § 63½.*]

Appeal from the District Court of the United States for the Second Division of the District of Alaska.

The appeal in this case is from a decree adjudging the appellee to be the owner of an undivided one-half interest in the Byrnes Bench claim, in the Nome Mining District, Alaska, and requiring the appellant to convey to him such interest. The decree is based on findings of fact which, in substance, are as follows: That on June 12, 1905, the appellee and the appellant entered into an oral agreement to locate jointly, in the name of the appellant, and appropriate the placer claim in controversy, each to own an undivided one-half thereof when located; that, pursuant to that agreement, the appellant on said date located the claim, and that in making said location the appellee and the appellant together marked the boundaries of the claim by placing stakes at the corners thereof, and that working together they thereafter made discovery of gold upon the claim, and performed all the acts necessary to constitute a valid mining location; that after locating it they went upon the claim and together prospected for a period of about two

---
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

weeks; that each contributed his individual labor, and they jointly furnished the provisions, tools, and implements used in prospecting the claim, and each equally contributed to the expenses incurred during said period; that the appellee performed all the conditions on his part to be performed under the terms and conditions of the agreement, and that the appellant holds the legal title to an undivided one-half interest in and to said mining claim in trust for him.

Orrin K. McMurray, Hobbes & Bell, and Grigsby & Hill, for appellant.

Albert H. Elliott, O. D. Cochrane, and W. A. Gilmore, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The appellant contends that the oral agreement alleged in the bill is not proven by such clear and satisfactory evidence as to justify the court in decreeing a specific performance thereof. As to some of the material questions involved, the testimony of the two parties to the suit was directly contradictory. But the following is not disputed: Prior to the location of the claim they had been jointly interested in other mining property, and on the morning of June 12th, they were living together in a cabin on the Alma Bench claim, in which they were partners. On that morning they went out in different directions to look for water for their ditch. When they met at noon, the appellant reported that he had found some ground which he was going to stake. In the afternoon he and the appellee prepared stakes, went to the ground so discovered by the appellant, and, working together, staked the Byrnes Bench, the claim in controversy; the appellee writing the notices thereof. Upon completing that location, which was located in the name of the appellant, they went together and staked an adjoining claim, which was located as the Florence Bell, in the name of the appellee. Having made the two locations, they fixed upon a point on the line between them to sink a shaft. It was in sinking this shaft that the labor was performed which is referred to in the findings of fact. So far there is no dispute as to what was done. The appellant testified that there was no partnership or joint interest in either of the locations. The appellee testified that the agreement was, before they left the cabin, that they would make two locations, and that they should be jointly and equally interested in both. He testified, further, that before sinking the shaft he had discovered that the location he had made of the Florence Bell overlapped another claim, and that he considered the remaining fraction thereof insufficient in value to justify assessment work, and, on consultation with the appellant, he tore up the location notice. The appellant denied that he had any knowledge of the abandonment of the Florence Bell claim, and his testimony was that the shaft which was sunk on the line between the two claims, although it was done by the joint labor of the two locators, was intended for the benefit of each locator in support of his individual right to his own location, and not for their joint benefit as owners in the Byrnes Bench claim. The court below found the fact to be otherwise, and it is reasonable to presume that the finding was influenced largely by the testimony of one

Ewing, a disinterested witness, who testified that in April, 1906, while the appellant was working with him and another in sinking a shaft in a claim near by the property in controversy, the appellant pointed out to him the shaft on the Byrnes Bench, and stated that he and the appellee had sunk it, and that they expected to go back with a boiler and put the hole down to bedrock, and, referring to the Florence Bell claim, said that he and the appellee did not think "it was worth being bothered with to do the assessment work or worth recording; that they had tore up the location notice; that they did not record it; that Mr. Morgan and he believed it was not big enough to bother with, or something to that effect; * * * he said at the time they abandoned it had they known it was as wide as it was they would have held on to it, but they thought it was mostly covered by the Big Eight." We discover in the evidence no ground for setting aside or discrediting the findings so made on the conflicting testimony. As made, they are sufficiently particular and definite to sustain the decree.

The principle contention of the appellant is that the agreement is within the statute of frauds. Authorities are cited to the proposition that an agreement to locate a mining claim in the name of one, the same to be held for his benefit and the benefit of the other party to the agreement, is an agreement to create a co-tenancy in real estate, and is therefore within the statute, that all agreements to convey or hold real estate in trust are within the statute, and that while agreements to form a partnership to acquire mining claims by location or by purchase with partnership assets and to operate the same or to deal in such properties are not within the statute so far as the right to share in the profits is concerned, there was in the case at bar no partnership agreement and no partnership, and no agreement to operate the mining claim or to obtain joint profits therefrom. The appellee, on the other hand, contends that there was a mining partnership sufficient to take the case out of the operation of the statute of frauds, that the parties agreed to locate the claim, that they did jointly locate it, and jointly worked together to make discovery, and prospected it for a period of two weeks, and, in so doing, they used a common stock of provisions and common tools and implements, and each contributed equally to the expenses incurred—citing cases such as Shea v. Nilima, 133 Fed. 209, 66 C. C. A. 263; Gore v. McBrayer, 18 Cal. 582; Settembre v. Putnam, 30 Cal. 490; Moritz v. Lavelle, 77 Cal. 10, 18 Pac. 803, 11 Am. St. Rep. 229; Hirbour v. Reeding, 3 Mont. 15; Raymond v. Johnson, 17 Wash. 232, 49 Pac. 492, 61 Am. St. Rep. 908; Murley v. Ennis, 2 Colo. 300; Welland v. Huber, 8 Nev. 203.

While we agree with the appellant that there was no relation of partnership between the parties, we are clearly of the opinion that the proven facts are sufficient to impose upon the appellant's title to the mining claim a resulting trust for the benefit of the appellee to the extent of his one-half interest therein, and that the case comes within the class of judicial exceptions created by equity to prevent the use of the statute of frauds in support of inequitable and fraudulent schemes. The facts show a joint venture to acquire the owner-

ship of a specific mining claim. In all its essential features it is the case of a joint purchase of property in which each of the two persons interested advances one-half of the purchase price, and the title is taken in the name of one for the benefit of both. The title to the mining claim, so far as there was title, was acquired by appropriation under the mining laws. To appropriate it, it was necessary to stake the claim and mark its boundaries and make a discovery of mineral. To do these acts was to pay the purchase price. In doing them, each of the parties to the agreement contributed one-half, and in equity each is entitled to one-half of what was acquired thereby. Every principle of equity on which are sustained resulting trusts and grubstake contracts is applicable to such a case. In Gore v. McBrayer, 18 Cal. 583, where the plaintiff, the defendant, and others verbally agreed to prospect for quartz and to be equally interested in claims taken up, and the defendant discovered a lead, and located it by putting up a written notice with the names of the plaintiff and others on it, it was held that the plaintiff's right attached by these proceedings, and could not be divested by the mere act of the defendant in taking down the notice and putting up other notices with other names. The court said:

"It is as if Gore had made McBrayer his agent to take up the claim for him and in his name; and, upon performance of the act, Gore's title, so to speak, vested, and he was the owner, subject to the rules of the vicinage, of the claim, or his share of it. We do not see what the statute of frauds has to do with such a case."

In Doyle v. Burns, 123 Iowa, 488, 99 N. W. 195, it was held that an agreement by which each of two parties was to have a one-half interest in whatever mining claims either might thereafter locate or obtain an interest in, each to furnish labor and supplies, was not within the statute of frauds, and that since there was no allegation or evidence that the agreement extended to working the mines on joint account no partnership existed. In Bryant v. Hendricks, 5 Iowa, 256, it was held that a verbal agreement between two or more persons having claims on public lands that one shall enter the tract on which the claims are located, and the other shall pay his proportion toward the entry of the land, is not within the statute, and that the contract created an implied or resulting trust. In Gibbons v. Bell, 45 Tex. 417, it was held that a contract by which parties agree to acquire public land together, one furnishing the certificate, and the other the labor and expense of surveying and procuring patent, is not a contract for the purchase and sale of land by one to the other, but is an agreement by which they are to acquire land jointly, and that the legal title acquired was a bare naked trust in the patentee, held in subordination to the superior equitable rights of the other party to the extent of his undivided interest before partition. The same was held in Smith v. Crosby, 47 Tex. 121.

The decree is affirmed.