## ATCHLEY v. VARNER.

No. 18534. Opinion Filed Sept. 17, 1929.

J. H. Foster, Womack, Brown & Cund, and Mounts & Chamberlin, for plaintiff in error.

Dale, Brown & Hoyland and Wilson & Roe, for defendant in error.

TEEHEE, C. On April 20, 1926, appellant, Mary Atch'ey, referred to as plaintiff, sued appellee, Fred Varner, referred to as defendant, and Burk Divide Oil Company, Consolidated, and the Belle Oil Company, as codefendants, but not parties on appeal, to establish a trust in personal property operative upon the accrual of profits to defendant derived from the sale of oil and gas produced from certain real property leased for oil and gas purposes. By objection to the introduction of evidence in the cause, defendant admitted the allegations of fact upon which the suit was predicated. The court sustained the objection. Upon plaintiff's election to stand on her petition, judgment that she take nothing by her suit was rendered. The general question here therefore is: Does plaintiff's petition state a cause of action against defendant?

In substance, plaintiff alleged that she is the equitable owner of an undivided 1/288th interest in and to all of the oil, gas and minerals which have been and may be produced from a certain oil and gas mining lease by the lessee, Burk Divide Oil Company, Consolidated, or its successors in interest, of which moiety claimed by plaintiff defendant appears as the record owner; that her said interest arose and exists by virtue of an oral agreement entered into by and between plaintiff's husband and defendant on or about January 21, 1919, based on a state of facts, to wit:

Plaintiff's husband selected for the purpose of locating a placer mining claim a certain 40-acre tract of the public lands of the United States, the same being in the bed of Red river, of which tract 20 acres was for himself and the other 20 acres for his wife, this plaintiff, and in which selection he joined with certain other locators to constitute a joint mining claim known as the Mary Isle Placer Mining Claim consisting of 160 acres, wherein each locator would have an undivided interest equivalent to the moiety that the legal individual location of 20 acres bore to the joint claim of 160 acres; that upon being informed that his wife was ineligible as a locator, he transferred her right and claim of selection of location to said 20 acres and her right of membership in the joint mining venture to defendant, in consideration whereof defendant agreed to perfect said location as a part and parcel of the joint mining claim, and that in the event such joint claim proved to be profitable defendant would pay or direct to be paid to plaintiff the one-half of the revenues and profits and the one-half of the proceeds of the sale of oil, gas or other minerals derived or produced therefrom to which defendant's interest in said joint mining claim acquired therein pursuant to the said oral agreement should be entitled.

Subsequent to said oral agreement, defendant and his co-locators constituting the said Mary Isle Placer mining claim, consolidated their said joint claim with two other like claims adjacent thereto and located by various other parties, such other joint claims being known as the Judsonia and Belle Isle Placer mining claims, the whole of said consolidated claim comprising 480 acres, and it being agreed in said consolidation that each locator would have such interest in the whole of the consolidated properties as his interest in his individual location bore to the consolidated claim; that after said consolidation, the consolidated joint locators assigned their claims to the Burk Divide Oil Company, Consolidated, reserving to the consolidated locators a 25 per cent. royalty of all oil, gas and other minerals that may be produced from said consolidated claim; that thereafter in litigation involving the rights of the consolidated joint locators to locate placer mining claims on said lands, it was judicially determined that said lands were not subject to placer mining entry and that defendant and his said consolidated colocators acquired no rights in and to the locations thus made, such judicial determination having been made by the Supreme Court of the United States in the cause entitled Oklahoma v. Texas, 258 U. S. 574, 66 L. Ed. 771, decided May 1, 1922; that subsequent to said litigation the parties

to the consolidated joint mining venture modified their agreement in that if the said Burk Divide Oil Company, Consolidated, should be able to secure from the United States a lease or leases covering the lands comprised in the consolidated joint mining claim at its expense and without further cost to said joint locators, the royalty reserved to said joint locators would be in the proportion of one-sixth of all rents and profits and of the oil and gas that may be derived and produced from said leasehold so obtained from the federal government; that said Burke Divide Oil Company, Consolidated, prosecuted its claim for such leases and obtained from the federal government a lease covering 237 acres of lands originally included within the consolidated claim, from which leasehold said lessee has reduced to possession a great quantity of oil; that subsequent to the consolidated joint mining venture agreement, her said husband died, and that she thereafter was informed that he had been erroneously advised as to her eligibility to file and perfect a placer mining claim upon the public lands of the United States, and that in her efforts to collect and bring under her control all her property she sought from said defendant her share of the proceeds of oil produced from said leasehold, defendant's interest therein under the consolidated joint venture then being equivalent to a 1/144th interest of which her share was one-half or the equivalent of a 1/288th interest; that thereupon defendant repudiated said agreement entered into with her husband, whereunder her said claim of interest arose, and refused to pay or cause to be paid over to her such share of the proceeds of the oil produced from said leasehold to which she was thus entitled, and thereupon prayed judgment for her said interest in the monies held by said defendants and which may thereafter accrue, and that her rights in and under the said oral agreement be adjudicated, and that she be adjudged and decreed to be the owner of one-half of the oil and gas produced from said leasehold accruing to defendant.

Defendant's pleading, sustained by the court, styled "Objection to the Introduction of Evidence and Demurrer to Petition," was as follows:

"The petition upon its face shows that the verbal contract relied upon by plaintiff is a contract for the sale of and interest in land, and therefore void under section 5034, Complied Laws of Oklahoma, 1921.

"Second. The petition fails to show that the plaintiff complied with the Act of Congress approved March 4, 1923, which required all persons claiming leases or an interest in the lands to apply to the Secretary of the Interior for such lease or permit within 60 days after March 4, 1923, and secure from the Secretary a permit or lease to explore the land for oil or gas.

"Third. It being shown by the petition of plaintiff that the defendant acquired his interest in the oil and gas being produced from the land described in plaintiff's petition by virtue of a permit and lease from the Secretary of the Interior, who alone, under authority of Congress, has the right to grant leases and permits, this court is without right and authority to change the award made to the defendant by substituting the plaintiff for the defendant as a lessee of the government.

"Fourth. This court is, under the Act of Congress of March 4, 1923, without jurisdiction to declare a trust in favor of the plaintiff and take from the defendant an interest in the land or oil or gas which has by the Secretary of the Interior been awarded to the defendant.

"Fifth: The alleged parol contract between C. R. Atchley and Fred Varner purports to convey an interest in land and oil and gas rights belonging to the United States, when, in fact, as shown by the decision of the Supreme Court of the United States, no right or interest in said land or the oil and gas produced therefrom existed in C. R. Atchley or any other person under such placer mining laws or any other law of the United States; and any attempted transfer of rights in said land or oil and gas extracted therefrom was a nullity and conferred no rights in said property to defendant and passed no rights therein from plaintiff or C. R. Atchley, the since deceased husband of plaintiff.

"Sixth. The petition on its face shows that C. R. Atchley was attempting to perpetrate a fraud upon the United States in its disposition of the public domain, in this to wit: By seeking to acquire an interest in the public domain by an agreement and the procurement of a person to acquire lands or an interest therein in violation of the laws of Congress applicable to the lands in the bed of Red River.

"Wherefore, defendant prays the court to withdraw this case from the jury and render judgment therein for the defendant and against the plaintiff."

The judgment of the court was based on the second ground of the objection. This action of the court plaintiff alleges was erroneous, and prays a reversal of the judgment.

From the pleadings of the parties, and their argument, which covers all the grounds contained in defendant's objection, and the theory on which the court proceeded in the disposal of the cause, it is clear that the con-

trolling and decisive proposition of law is the question of the character or nature of plaintiff's claim. This involves the principle embodied in plaintiff's first proposition, which is as follows:

"An agreement whereby the owner of lands or claim thereto conveys his title or claim to another in consideration whereof the latter agrees to divide with a third party the profits derived by him from a joint mining venture with others upon such lands and the lands of others adjacent thereto, or the proceeds received by him from the sale of any oil or gas or other mineral which might thereafter be produced from such lands, does not create a trust in the lands conveyed nor any interest therein in favor of such third party, but merely a trust in a portion of the profits derived or the proceeds of the sale of such oil, gas or other minerals as might be produced from such lands."

Plaintiff's contention thereunder is that her claim is a trust in certain personal property of which defendant became possessed traceable to the oral agreement entered into by and between her husband and defendant, whereunder he, defendant, became a locator of a placer mining claim upon public lands of the national government, and which lands located on eventually were in part covered under the oil and gas lease obtained by the Burk Divide Oil Company from the federal government through the Secretary of the Interior pursuant to the provisions of chapter 249, 42 Stat. 1448, hereinafter particularly referred to.

In quantity and quality, plaintiff's claim is described as an undivided 1/288th interest in and to all of the oil, gas and minerals produced by the lessee named, or its successors in interest, from that certain leasehold estate described in the petition. This lease covered 237 acres of the original locations of 480 acres comprised in the original joint placer mining claims designated in the joint venture agreement as the Judsonia, Belle Isle, and Mary Isle Placer mining claims. In the leasehold, through the processes whereby it was brought into existence, defendant's prospective interest in original selected area was recognized by the lessee as an undivided interest in a royalty of one-sixth, in the minerals produced under the lease, or in the proceeds of the sales thereof, which is alleged to be equivalent to a 1/144th interest. Plaintiff's claim, in fact, therefore, is a one-half interest in defendant's interest as fixed under the joint venture agreement, which was the result of defendant's agreement with plaintiff's husband, and by force of which defendant was enabled to establish himself as of that class of placer mining claimants coming within the purview of said chapter 249, 42 Stat. 1448, and with his claim, in equity and good conscience, thereunder recognized and protected by virtue of the lease granted to the Burk Divide Oil Company.

Plaintiff's claim as thus ascertained to be, therefore, does not partake of the character of an interest in real property, as is by defendant contended, and hence does not come within the provisions of section 5034, C. O. S. 1921, and void thereunder by reason of its resting in a verbal agreement, as is asserted by defendant, and of which class of contracts the court, in effect, held the claim to be. That the claim is not of that class interdicted by said statute is true for the further reason that the same exists in a state of inchoacy and thus continues until there has been reduced to possession by the operator of the leasehold from development thereof the minerals designated in the lease, upon which production it thereupon operates and fastens to the extent of a one-half interest of defendant's fixed interest under the joint venture agreement. It therefore may be said to be in the nature of a chattel interest in expectancy, with a present legal existence by virtue of defendant's agreement with plaintiff's husband.

Treating of the principle of a trust in personal property in its relation to the statute of frauds, a standard author uses this language:

"Personal chattels are not within the terms of the statute, and trusts in personal property may be declared and proved by parol, though Mr. Eden said that 'he had not been able to find an instance of a declaration of trust of personal property, evidenced only by parol; having been carried into execution.' And certainly the English cases usually referred to do not establish the proposition in express terms. There does not seem to be any objection, however, to the establishment of a trust in personal property by parol. The owner in the absence of a statute has entire control of it; he can sell and transfer it without writing and by parol, and if he can transfer it by parol, there is no reason why he may not by parol transfer it upon such lawful terms, and to such uses and trusts, as he may desire. It has been so ruled in express decisions in the United States." 1 Perry, Trusts (6th Ed.) Section 86.

Many cases cited by the author in support of the text present examples of a variety of circumstances to which the principle has been applied. See, also, in further illustration: Talbott v. Barber, 11 Ind. App. 1, 38 N. E. 487; Franks v. Williams, 37 Tex. 24; Calder v. Moran, 49 Mich. 14, 12 N. W. 892; Woolfolk v. Earl, 19 Ky. L. 343, 40 S.

W. 247; Mills v. Thomas, 194 Ind. 648, 144 N. E. 412; Meredith v. Meredith, 204 Ky. Rep. 608, 264 S. W. 1109; and Haskell v. Merrill (Tex Civ. App.) 242 S. W. 331.

In 39 Cyc. 66, we find this language:

"It is not essential in all cases that the creator of a trust constitute a third person trustee and transfer the legal title to him, for it is well settled that one may create a trust in his own property by constituting himself trustee, provided his words or acts clearly and unequivocally denote an intention to hold henceforth as trustee for the benefit of another. As the nature and effect of a transaction of this character is that the legal title remains in the donor for the benefit of the donee, no transfer or assignment of the legal title is necessary."

Under the foregoing authorities, it thus clearly appears that plaintiff's claim has all the elements of a valid trust in personal property concerning which defendant was resting under no disability to contract for the benefit of a third person. In so doing he was not without the pale of legal sanction. Section 4988, C. O. S. 1921. The agreement relied on by plaintiff, therefore, is not subject to the objections interposed thereagainst by defendant as being one for an interest in realty.

Even if the agreement between plaintiff's husband and defendant called for a transfer of a part of defendant's title to plaintiff upon perfection thereof, it still would not be subject to the objection thus urged, for it is a settled rule that:

"An agreement between two or more persons to explore the public domain, and discover and to locate a mining claim or claims, for the joint benefit of the contracting parties, does not fall within the statute of frauds and need not be in writing. If, in pursuance of the agreement, one of the parties locates the claim in his own name, he holds the legal title to the interests of the others in trust for them." Shea v. Nilima, 133 Fed. 209, 66 C. C. A. 263.

In such cases the rule proceeds on the ground that equity will prevent the repudiating party from using the statute of frauds in support of his own inequitable conduct or act in relation to his agreement. Hendrichs v. Morgan, 167 Fed. 106, 92 C. C. A. 558. Other relevant cases will be found in Barringer and Adams, Mines and Mining, 208, and volume 2 of the same works at page 259.

We next consider the relevant provisions of said chapter 249, 42 Stat. 1448, which defendant contends foreclose plaintiff's claim. This is a special act of the Congress. The relevant provisions thereof are as follows:

"Section 1. That the Secretary of the Interior is hereby authorized to adjust and determine the equitable claims of citizens of the United States, and domestic corporations to lands and oil and gas deposits belonging to the United States and situated south of the medial line of the main channel of Red river, Okla., which lands were claimed and possessed in good faith by such citizens or corporations, or their predecessors in interest, prior to February 25, 1920, and upon which lands expenditures were made in good faith and with reasonable diligence in an effort to discover or develop oil or gas, by issuance of permits or leases to those found equitably entitled thereto.

"Section 2. That applications for permits and leases under this act shall be made to the Secretary of the Interior, and shall be made within and not after 60 days from and after the date that this act becomes a law. Leases and permits under this act may be granted to the assignees or successors in interest of the original locators or the original claimants in all cases where the original locators or original claimants have assigned or transferred their rights, but when leases or permits are granted to the assignees or successors in interest of the original locators, or original claimants, the said leases and permits shall be subject to all contracts, not contrary to law or public policy, between the original locators or original claimants and their successors in interest.

"In case of conflicting claimants for permits or leases under this act, the Secretary of the Interior is authorized to grant permits or leases to one or more of them as shall be deemed just.

"Section 3. That not more than 160 acres shall be granted by leases or permits to any one person or corporation, except in those cases where two or more locations or claims have been assigned to one person or corporation, and in such cases not more than 640 acres shall be granted by leases or permits to any one person or corporation."

Defendant contends that by force of the foregoing provisions of law, there is a want of jurisdiction of the district court to declare a trust in property to which he was adjudged to be entitled by the tribunal vested with that particular jurisdiction, to wit, the Secretary of the Interior, such jurisdiction having been so exercised by the grant of the lease to the Burk Divide Oil Company, the assignee of the locators. As we read the law we think this contention spends its force upon statement thereof. The parties whose claims are recognized as entitling them to a lease from the government are by section 1 described as those who in good faith claimed and possessed the lands affected by the act, or were so claim-

ed and possessed by their predecessors in interest, prior to February 25, 1920, and upon which lands in good faith and with reasonable diligence expenditures had been made to find and to reduce to possession oil or gas. In other words, the parties must be in a position to assert a direct interest in the land to entitle them to a lease. If the parties whose claims are thus recognized by said section 1 have assigned their interests, their assignee is by section 2 the party entitled to the lease, in which event the lease is subject to all contracts between the original locators or original claimants and their successors in interest, with the limitation that such contracts shall not be contrary to law or public policy.

Clearly plaintiff cannot qualify as a locator either as contestant or contestee, nor can she qualify as an assignee of a claimant locator, for which reasons it is obvious that she is not of the class to whom a lease may have been granted by the department charged with the administration of the law. This, in effect, was the construction placed on the law by the Secretary of the Interior in his decision of award (official report and page not furnished), from which we quote, to wit:

"The Act of March 4, 1923, does not authorize me to settle controversies based upon contracts between lessees under this act and their predecessors, or successors in interest, or between joint applicants. The courts have jurisdiction of these matters."

This departmental construction finds support by land decisions arising under the leasing act of February 25, 1920, 41 Stat. 437. Burke v. Taylor, 47 L. D. 585, and Son v. Midway Southern Oil Co., 48 L. D. 210. In principle and operative effect, in respect to the granting of leases thereunder to claimants, we see no material distinction between that act and the act under consideration. The lands thereby authorized to be leased were such as had been entered by various parties for oil and gas mining purposes at a time when the same were not then known to be oil and gas bearing lands, or had been withdrawn from entry, which rendered the rights of entryman of doubtful legality.

By section 18, it was provided that claimants of developed lands, in order to obtain a lease, were required to relinquish to the United States, within six months after the approval of the act, all of their right, title and interest claimed in the lands possessed by them prior to a certain date, and that "all leases hereunder shall inure to the benefit of the claimant and all persons claiming through or under him by lease, contract, or otherwise, as their interests may appear, subject, however, to the same limitation as to area and acreage as is provided for claimant in this section." By section 19, a like inuring provision applied to leases granted to claimants of undeveloped lands on which certain expenditures had been made prior to their withdrawal from oil or gas location and entry.

In the Burke Case, construing the inuring clause of section 18 above, it was held:

"Section 18 of the Act of February 25, 1920, contemplates and requires that a lease thereunder shall issue to the person, persons or corporation possessing and surrendering to the United States the mining title; those claiming under or through such claimant or claimants being protected by the provision therein that 'all leases hereunder shall inure to the benefit of the claimant and all persons claiming through or under him by lease, contract, or otherwise, as their interests may appear.'"

On rehearing the ruling was adhered to, the Secretary of the Interior observing:

"The purpose of this provision is obviously to permit the Land Department to deal with the holder or holders of the record mining title. He or they must surrender and convey that title to the United States. Those who claim through or under him are not recognized as persons entitled to a lease, but their interest is protected by the inuring clause so that if lease issue to him, their interests may be determined by agreement or litigation in the proper form and so protected."

In the Son Case, the rule of the Burke Case was followed, the holding being as follows:

"The purpose and intent of the provision of section 19 of the Act of February 25, 1920, which specifies that 'all permits or leases thereunder shall inure to the benefit of the claimant and all persons claiming through or under him by lease, contract, or otherwise, as their interests may appear,' is obviously to permit the Land Department to deal with the holder or holders of the record mining title, and a priori the mere lessee of such claimant, not being himself in a position to surrender to the United States the mining title, is not entitled to a lease in his own name under said section."

In United States v. Cerecedo Hermanos y Compania, 209 U. S. 337, 28 Sup. Ct. Rep. 532, 52 L. Ed. 821, it is said:

"When the meaning of a statute is doubtful, great weight should be given to the construction placed upon it by the department charged with its execution."

In either view that we may take of the

statute under consideration, therefore, whether the same be considered self-constructive or doubtful, we think the departmental construction thereof, as above shown, was correct. The fact, therefore, that defendant's claim was favorably adjudicated by the Secretary of the Interior by award of a lease to the Burk Divide Oil Company pursuant to the provisions of said chapter 249, did not affect the jurisdiction of the district court of Tillman county to hear and determine plaintiff's claim.

As defendant's claim was through and by the oil company perfected subject to all contracts not contrary to law or public policy as by the law provided, the further question is presented thereunder of whether or not plaintiff's claim comes within that class of contracts excluded by the statute. In this relation defendant contends that the agreement between plaintiff's husband and the defendant, out of which plaintiff's claim arises, was tainted with fraud in that it was for the express purpose of acquiring from the government property by fraudulent means, and for that reason, it is unenforceable. In this defendant relies on the rule of law as it is expressed in the cases of Mitchell v. Cline, 84 Cal. 409, 24 Pac. 164, and Durant v. Corbin, 94 Fed. Rep. 382, 20 M. R. 84. Those cases are to the effect that it is contrary to the policy of the federal government to use what in mining parlance is denominated as "dummy locators," that is to say, to make a location in the name of another, which, in fact, is for the person thus using the name and who thus acquires title to public land in excess of that to which he is so entitled as a good faith locator.

It is clear from the allegations of fact that plaintiff's husband was not proceeding in a fraudulent manner to acquire title to 40 acres of the public lands—20 acres thereof being for himself and the other 20 for his wife—but, on the contrary, that he was acting in good faith upon advice of counsel in which he later was informed that his wife under the placer mining law was ineligible to locate and acquire title to a placer mining claim upon public lands. It was then that the agreement was entered into between plaintiff's husband and defendant, whereunder he, defendant, became a locator on the tract selected for plaintiff and a member of the group of locators constituting the Mary Isle Placer Mining Claim, with no act on his part to indicate that he was playing the role of a dummy locator. Subsequent to the death of plaintiff's husband, she was informed that the advice given her husband as to her eligibility as a locator was erroneous.

Did the fact that plaintiff was a married woman at the time of the attempted location by her operate as a disqualification and thus render void the agreement relied on, We have not been referred to any case that so holds. The qualification of a locator is fixed by section 2319, U. S. R. S. By this section it is provided:

"All valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States and those who have declared their intention to become such, under regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States."

The governmental agency charged with the administration of the law has expressly ruled that "married women, who are citizens of the United States, or who have declared their intention to become such, may locate and secure patent for mining claims, upon due compliance with law." Clark, Mineral Law Digest, 49. By section 1992, U. S. R. S., in so far as the same is here relevant, it is provided that:

"All persons born in the United States and not subject to any foreign power * * * are declared to be citizens of the United States."

While it is not specifically alleged that plaintiff is a citizen of the United States, it does appear that she is a resident therein, and from this the legal presumption arises that plaintiff, being a natural person, is a citizen, and thus meets the qualification fixed by the controlling provision of law. Jantzon v. Arizona Copper Co., 3 Ariz. 6, 20 Pac. 93; Garfield N. & M. Co. v. Hammer, 6 Mont. 53, 8 Pac. 153; Clark, Mineral Law Digest, 54. From the language of the law, therefore, it quite clearly appears that a citizen married woman is eligible as a locator of a placer mining claim upon public lands of the United States subject to such entry, unless we are prepared to hold that such a person is not a citizen of the United States, which, of course, would be the height of absurdity.

The facts alleged by plaintiff in this relation, therefore, stand as a complete refutation of the theory that plaintiff's husband and his colocators were engaged in a con-

spiratorial venture in their assertion of rights which were later recognized by the federal government, though such rights were judicially denied to them, not, however, because the locators had not met the requirements of the placer mining law in respect to matters of procedure in the perfection of such rights, but because the lands involved were not subject to entry for placer mining locations. Oklahoma v. Texas, 258 U. S. 574, 42 Sup. Ct. Rep. 406, 66 L. Ed. 771. Clearly, therefore, plaintiff's claim is not brought within the rule of the cases relied on by defendant.

From these conclusions, it necessarily follows that the judgment of the district court was erroneous. The judgment is therefore reversed, and the cause remanded, with instructions to reinstate the same, and for such further proceedings as may not be inconsistent with this opinion.

BENNETT, REID, LEACH, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.