## MILLER v. DELAMETER et al.

No. 25480.    April 16, 1935.

E. M. Connor, for plaintiff in error.

Harry C. Fair, for defendants in error.

PER CURIAM.    This cause originated by the filing of an action in the court of common pleas of Tulsa county on the 13th day of June, 1933, by Tom Miller, plaintiff in error, against Sam G. Delameter and Frank H. Brakebill, doing business as Superior Motor Freight Lines, defendants in error, and also against Ben Barbour, doing business as the Barbour Transportation Company, to recover the sum of $1,970 as the amount alleged to be due the plaintiff for unpaid rent under the terms of a written lease upon a certain garage building in the city of Tulsa, Okla.

The petition alleged the execution and delivery to the plaintiff by Ben Barbour, doing business as Barbour Transportation Company, of a written lease covering certain real estate and premises, describing the same, of which plaintiff was the owner, said lease being dated December 21, 1931, and

being for a term of two years; that the terms of said lease provided for the payment of rent by the lessee at the rate of $130 per month; that Ben Barbour occupied said premises until the 31st day of May, 1933, but that he had only paid the rent called for by said lease to the month of September, 1932, having paid the sum of $110 on the September rent, leaving an unpaid balance of $20 due for that month, which, together with the remainder of the delinquent rent due under the terms of the lease, made a total amount due and owing the plaintiff of $1,970. The petition further alleges that on or about the 31st day of May, 1933, Ben Barbour sold and transferred all of the assets of his company at Tulsa, including the state permit for the transportation of freight by motor vehicles into Tulsa, the telephone in his name, the customer list, the good will, the office furniture and every other asset which he had at Tulsa, to the defendants Sam G. Delameter and Frank H. Brakebill, doing business as Superior Motor Freight Lines; that the exact consideration for such transfer was unknown to the plaintiff, but that a part of said consideration was the assuming of the liabilities of said Ben Barbour at Tulsa by said defendants, one of which obligations so assumed was the indebtedness owed the plaintiff.

The petition also contained allegations to the effect that Ben Barbour was insolvent and unable to pay his debts and obligations, and that a receiver should be appointed to take charge of his assets and preserve the same for the benefit of creditors, and prayed for judgment against the said defendants, and each of them, in the sum of $1,970, and for the appointment of a receiver for said Ben Barbour, and further prayed that a restraining order issue against the Superior Motor Freight Lines enjoining the payment to the said Ben Barbour of any sums of money during the pendency of this action, and that a restraining order also issue against the said Ben Barbour enjoining him from selling, incumbering or disposing of any of his assets during the pendency of the action.

After considerable proceedings had been had, including the issuance of a temporary restraining order, the dismissal by the plaintiff of the cause of action as to Ben Barbour, without prejudice, and the taking of a default judgment against the defendants Delameter and Brakebill, doing business as the Superior Motor Freight Lines, which was upon their application set aside and vacated, all of which has no bearing upon the issues raised in this appeal, said defendants by special leave of court filed their answer. In it they pleaded a general denial and also denied specifically that they, or either of them, had ever assumed, or agreed to assume, any of the indebtedness of said Ben Barbour in Tulsa, or anywhere else. The answer admits the purchase of Ben Barbour's state permit or certificate of public necessity and convenience, the good will of his business and his office furniture, and states that the consideration for such transfer was the sum of $3,000, $2,000 of which was paid in cash and the remainder of the purchase price was paid by the execution and delivery of two promissory notes, each in the amount of $500. It also contains the allegation that Ben Barbour had filed his voluntary petition in bankruptcy in the U. S. District Court for the Western District of Oklahoma, and had scheduled said two promissory notes of $500 each as a part of his alleged bankrupt estate. No reply was filed on behalf of the plaintiff.

The case was tried by mutual agreement of the parties to a jury of six men on the 27th day of September, 1933. The plaintiff introduced his evidence and rested, whereupon the defendants interposed their demurrer to the evidence introduced on behalf of the plaintiff, on the ground that the same did not show facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendants. The court sustained such demurrer to the evidence, allowing the plaintiff's exceptions. The plaintiff below, Tom Miller, prosecutes this appeal.

The plaintiff in error, although he bases his appeal upon several assignments of error, considers them under one heading in his brief, and thus raises but one issue, namely, whether or not the court erred in sustaining the demurrer to plaintiff's evidence. He contends that the evidence introduced at the trial on behalf of the plaintiff was sufficient, at least for the purposes of such a demurrer, to establish a prima facie case that the defendants had agreed with Ben Barbour to assume the latter's debts in Tulsa; that these facts constitute a right of action based on the theory of a third party beneficiary contract between the defendants and Ben Barbour in favor of the plaintiff; and that therefore the trial court committed reversible error in sustaining the defendants' demurrer to the evidence of the plaintiff.

The defendants in error maintain: First,

that the evidence was not adequate to constitute a cause of action, pointing out that the same consisted entirely of purported admissions of fact on the part of each of the defendants, which is, according to their contentions, the weakest form of evidence from the standpoint of probative force; and, secondly, that the fact that Ben Barbour had filed his petition in bankruptcy within four months after the making of said purported agreement to pay Barbour's debt to the plaintiff caused said agreement, if any there were, to be unenforceable as an illegal preference under the terms of the Bankruptcy Act (sec. 60 of the Act [USCA sec. 96]).

Considering first the question of whether the evidence in this cause was sufficient to constitute a cause of action for the purposes of a demurrer to the same, we wish to review said evidence briefly. The plaintiff offered in evidence the written lease sued upon and the same was admitted without objections on the part of the defendants. The lease was dated December 31, 1931, and expressly provided for the renting to Ben Barbour, doing business as the Barbour Transportation Company, by the plaintiff, of the property described in plaintiff's petition for a period of two years and for the payment of rent therefor of $130 per month, together with other provisions customarily contained in such leases. Tom Miller, plaintiff, then testified that after taking possession under this lease, Barbour occupied the leased premises continuously until the 31st day of May, 1933; that he had paid the rent required by the terms of the lease to September, 1932, and had paid $110 on that month's rent; that he, plaintiff, did not succeed in renting the property to anyone else until about the 15th day of September, 1933, and that he claimed the right to enforce the terms of the lease from September, 1932, the date from which the rent was delinquent, down to the 15th day of September, 1933, when the property was again rented as aforesaid; that the total amount due under this lease was $1,970.

He further testified that on or about the 31st day of May, 1933, Ben Barbour surrendered possession of said premises; that on the same date Barbour sold his business, including the office furniture and equipment which was then located in the plaintiff's building, to the defendants Delameter and Brakebill; and that a few days afterwards the defendants moved said furniture and equipment out of the building.

He also testified that on the evening of May 31, 1933, he called at the office of the Superior Motor Freight Lines and talked with the defendant Sam G. Delameter, who told him at that time that the defendants had paid Barbour by draft the full amount of the consideration for the purchase of his business and his certificate of public necessity and convenience, and denied that they had assumed any of Barbour's liabilities; that a few days after this conversation took place, one Bob Littrell, an employee of the Superior Motor Freight Lines, called upon the plaintiff and said to him, "Have you been up to get your money yet? You ought to get it, it is coming to you"; that shortly thereafter, plaintiff went to the office of the defendants accompanied by one Frank Bond and talked with the other defendant, Frank H. Brakebill. In this conversation the latter said: "I sent down for you by Bob Littrell. I was looking for you to come up sooner. We want to get you and settle up with you if you will trade out a little." That in the course of this conversation, in answer to the question whether the defendants had assumed Barbour's debts, Brakebill stated: "Hell, no. He may owe in Oklahoma City $15,000 or $20,000. We just assumed them on this end of the line." That Brakebill also said on this occasion: "On this end of the line it is all in pretty good shape. He had a good business and you know you are the only big debt he had. He owes a few other minor debts." That Brakebill then picked up a bill for about $260 or $270 payable to some lawyer, and stated with reference to it: "We are going to pay it. We will take care of it all right. There are just a few minor debts. Barbour had good business." He also testified that Brakebill stated: "Now, then, if you want your money, get busy. Let's trade out a little." That he further said, after admitting that Barbour had not been paid the full amount of the purchase price: "I will tell you what to do. We held back on Barbour enough to protect ourselves. You come back about five or six o'clock and Mr. Delameter will be in." Plaintiff thereupon testified that he did go back that evening, and talked with Delameter, who said: "Well, you had better trade out a little and get your money, because I have talked to a lawyer and the shape I got things in we can leave you out in the cold."

Frank Bond was then called by the plaintiff and testified as to the conversation between the plaintiff and Sam G. Delameter in substantially the same words as those used by the plaintiff in his testimony. The plaintiff also called another witness, named

Andy Boles, who corroborated the testimony concerning the conversation between the plaintiff and Bob Littrell, saying that he, Boles, was present when said conversation took place.

We consider this evidence sufficient to withstand a demurrer thereto. This court has repeatedly held that a demurrer to the evidence admits every fact that is in the slightest degree proved by the evidence, as well as all of the inferences and conclusions that can reasonably and logically be drawn therefrom. In the case of Sartain v. Walker, 60 Okla. 258, 159 P. 1096, this rule is stated in the following language:

"It is a well-settled rule that a demurrer to the evidence admits all the facts which the evidence tends to prove or of which there is any evidence, however slight, and all inferences which can be logically and reasonably drawn from the evidence."

See, also, Naill v. Order of United Commercial Travelers, 103 Okla. 179, 229 P. 833, citing a long list of cases.

In the above-mentioned case of Sartain v. Walker, supra, the court also laid down another rule applicable to the consideration of a demurrer to the evidence in the following language:

"This court has gone to the extent of holding, where there was any conflict in the plaintiff's evidence that would make any part of it unfavorable to plaintiff or sustain the defense, that in passing upon the demurrer to the evidence the court should consider such evidence as being withdrawn.

"This court in the case of Ziska v. Ziska, 20 Okla. 634, 95 P. 254, said: 'This court will consider as withdrawn all the evidence which is most favorable to the party demurring'."

See, also, Miller v. Marriott, 48 Okla. 179, 149 P. 1104.

Applying these rules, we do not feel at liberty to say that the plaintiff's evidence and the reasonable and logical inferences to be drawn therefrom do not in some degree, to say the least, tend to prove that the defendants had agreed with Ben Barbour to assume the latter's business obligations in Tulsa, and that this agreement was a part of the consideration for the transfer to them of his certificate of necessity and convenience and such other property as they may have purchased from him. Since these facts are the only ones relative to a prima facie case in favor of the plaintiff which are not clearly established by his evidence, we conclude that the plaintiff's evidence was sufficient as against a demurrer thereto to sustain the plaintiff's cause of action.

This court has held in numerous decisions that a promise made for the benefit of a third party when supported by good and valuable consideration is enforcible by the beneficiary against the promisor. The principle involved has also been embodied in the statutes of this state by the provision of section 9409, O. S. 1931, which reads:

"A contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it."

The more recent cases in which said principle has been applied by this court are: Rives v. Ada Electric & Gas Co., 91 Okla. 275, 217 P. 447; Hugo State Bank v. Hugo Nat. Bank, 96 Okla. 135, 220 P. 868; Bolene Refining Co. v. Zobisch Oil Co., 98 Okla. 202, 224 P. 942; Sigmon v. Rorabaugh-Brown Dry Goods Co. et al., 110 Okla. 17, 235 P. 921; Pioneer Mtg. Co. v. Ragsdale, 107 Okla. 82, 230 P. 259; Atchley v. Varner, 138 Okla. 156, 280 P. 616. The plaintiff's evidence, therefore, can be said to conform to a well-settled principle of law upon which his cause of action is predicated.

The defendants in error contend in their brief that the evidence in the case discloses the defense that the performance by them of the alleged agreement with Barbour to pay his obligation to the plaintiff would be an unlawful preference under the provisions of the Bankruptcy Act, by virtue of the fact that Barbour had filed his petition in bankruptcy in the United States District Court within four months after such agreement is claimed to have been made. The only evidence in the record relative to this issue is a stipulation that was entered into at the close of the plaintiff's evidence to the effect that Barbour had filed such a petition in bankruptcy on the 13th day of June, 1933. While there are certain statements in plaintiff's petition that Barbour was insolvent, they are wholly inadequate to have much, if any, bearing upon the question. We are not advised what disposition was made of Barbour's petition in bankruptcy, and there is not an iota of evidence concerning the question of whether the plaintiff had reasonable cause to believe that such a preference was intended. Therefore, the evidence is insufficient to advise the court of this defense, and we do not deem it necessary to consider the same.

For the reasons above stated, the order of the court below sustaining the demurrer to the plaintiff's evidence was reversible error, and the judgment rendered herein

should be reversed. The same is hereby reversed and the cause remanded, with directions to the court of common pleas to set aside said judgment and to grant the plaintiff a new trial, in accordance with the holdings hereinabove set forth.

The Supreme Court acknowledges the aid of Attorneys G. E. McKinnis, Jr., F. H. Reily, and Ray Evans in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. McKinnis and approved by Mr. Reily and Mr. Evans, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.