## TESTERMAN v. BURT et al.

No. 18938. Opinion Filed March 4, 1930.

Rehearing Denied June 17, 1930.

Stevens & Cline, for plaintiff in error Tom Testerman.

Ledbetter, Stuart, Bell & Ledbetter, for Melish Consolidated Placer Oil Mining Association in Red River.

T. P. Gore and E. E. Gore, for T. P. Gore.

Stevens & Cline, for Leslie C. Garnett.

Brown & Stater, for Burk-Bet Oil Company, W. F. Quay, and H. D. Hardenstein.

Jos. H. Aynesworth and Brown & Stater, for Burk-Senator Oil Company, Burk-Allied Oil Company, and Nacogdoches Oil Company.

LEACH, C. This suit with its many issues grew out of certain placer mining claims attempted to be made about the year 1918, in the south half of the bed of Red River, in Tillman county, Okla., on the theory that the land belonged to the federal government, while other locators claimed superior rights under state claims of ownership, the states of Texas and Oklahoma each asserting exclusive ownership and jurisdiction over the territory. The Supreme Court of the United States, in the case of State of Oklahoma v. State of Texas, in opinions reported in 256 U. S. 70, 65 L. Ed. 831, and 258 U. S. 574, 66 L. Ed. 771, and 259 U. S. 566, 66 L. Ed. 1067, held that the south bank of the river was the boundary line between the states of Oklahoma and Texas; that the territory involved belonged to the United States government, and was not subject to location or acquisition under either the mining or land laws of the federal government, and adjudged all claimants, except the United States, to have no rights therein. Prior to

the rendition of the opinion in the case referred to, the Melish Consolidated Placer Oil Mining Association in Red River was organized, and several of the original locators assigned their claims to the Association, who entered into contracts with certain other parties to this action or their assignors to drill test wells for oil and gas and develop portions and parts of the acreage and claims which the Association acquired from the original locators.

After the decisions in the case of State of Oklahoma v. State of Texas, supra, Congress enacted, in March, 1923, what is referred to as a relief measure (42 Stat. 1448), the purpose and object of which will be gathered in part from the following quoted part of the bill:

"**Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,** that the Secretary of the Interior is hereby authorized to adjust and determine the equitable claims of citizens of the United States, and domestic corporations to lands and oil and gas deposits belonging to the United States and situated south of the medial line of the main channel of Red river, Okla., which lands were claimed and possessed in good faith by such citizens or corporation, or their predecessors in interest, prior to February 25, 1920, and upon which lands expenditures were made in good faith and with reasonable diligence in an effort to discover or develop oil or gas, by issuance of permits or leases to those found equitably entitled thereto.

"Sec. 2. That applications for permits and leases under this act shall be made to the Secretary of the Interior. * * * Leases and permits under this act may be granted to the assignees or successors in interest of the original locators, or the original claimants in all cases where the original locators or original claimants have assigned or transferred their rights, but when leases or permits are granted to the assignees or successors in interest of the original locators, or original claimants, the said leases and permits shall be subject to all contracts, not contrary to law or public policy, between the original locators or original claimants and their successors in interest." 30 USCA. secs. 230-231.

On September 1, 1925, under the provisions of such legislation, there was awarded to the Melish Consolidated Placer Oil Mining Association in Red River, which will hereinafter be referred to as the Association or Melish Association, leases or permits on approximately 222 acres of the 640 acres to which it made claim under such legislation, and to the plaintiff in error herein, defendant below, Tom Testerman, there was awarded a one-acre lease on which was located receivers well No. 156, which latter award carried with it approximately $110,000 accumulated from the production of the well held by the federal receiver.

This action was commenced in the district court of Tillman county, by J. A. Burt, in January, 1926, the plaintiff naming in his petition as defendants, the Melish Association, Tom Testerman, as its president, Elsie E. Wright, secretary, and Tom Testerman, M. L. Whelan, E. J. Boase, Henry D. Green, and Arthur Atkins, as trustees thereof, and alleged in part in his petition that the purposes of the organization were to create a common-law trust, designate trustees thereof in whom shall be vested certain placer mining property then and there supposed to be owned by the beneficiaries of said trust, and to hold, develop, and operate the same as a unit for the mutual benefit of the certificate, or unit holder of the Association; that he, plaintiff, was the owner of certain units; that the Association acquired and owns a lease or permit on 222 acres of land in Red River, Tillman county, which constitutes the sole and only property of the Association, except certain funds from oil produced from wells on said tract accumulated during a period of federal receivership; that the trustees of the Association dominated its affairs to their own personal interest so that the plaintiff and those owning a small number of units have no voice in the handling of the affairs of the Association; that certain of the trustees and those associated with them, for the purpose of obtaining the property of the Association and of a large number of shares of the proposed corporation for their own personal benefit without actual outlay of money, applied, under the laws of the state of Delaware, for a charter for a corporation, under the name of the Melish Oil Corporation; and further alleged that the sale, transfer, and assignment of the assets of the Association to such named corporation was void and ineffective because the proposed transfer was unauthorized by the requisite number of unit holders, and because of the illegality of the meetings at which a vote was taken thereon; alleged that there was a total lack of harmony among the trustees and that no steps were being taken to preserve the property of the Association and of the right of the plaintiff therein; that the leases and permit of the Association would be canceled unless immediate steps be taken to comply therewith, and prayed for the appointment of a receiver, and that the

property of the Association be ordered sold and distributed to the unit holders in accordance with their several holdings and for other appropriate equitable relief.

One J. P. Stuart was granted leave to intervene in the cause as a party plaintiff, and he adopted the petition of the plaintiff in so far as applicable.

The Association, acting through P. W. Raemer as president, J. G. Price as secretary, and Arthur Adkins, P. W. Raemer, Henry D. Green, J. G. Price, P. W. Cress, and C. H. Hyde, who alleged they were officers of such Association and six of the nine members of its board of trustees, filed answer and cross-petition, which, with the amendment thereto covers over 50 pages of the case-made, wherein they deny the allegations of the plaintiff's petition except such as are specifically admitted, and further alleged and set forth that the Association was a voluntary trust or partnership organized under articles of association comprising an original agreement dated January 2, 1919, and by later amendment thereto made at the annual meeting of the unit holders held January 5, 1926, the number of trustees of the Association was increased from five to nine. Further alleged, with much detail, mismanagement of the affairs of the Association by Tom Testerman, M. L. Whelan, E. J. Boase, former members of the board of trustees and certain other named officers of the Association, by the allowance of unauthorized claims and the issuance of certificates of units and other negligent acts and mismanagement on the part of the said former officers and trustees of the Association; and further alleged therein and by trial amendment to its original answer and cross-petition, in substance, that the defendant Tom Testerman, while acting as an officer and representative of the Association and under the direction of the trustees of said Association, employed Thomas P. Gore and Leslie C. Garnett as attorneys for said Association and with the consent and approval of the Association and its trustees, presented to the Secretary of the Interior an application for an oil and gas lease and permit or what is known as the "Border Line" claim, on which claim was located well No. 156; that the said Tom Testerman, Thomas P. Gore, and Leslie C. Garnett had the full and unrestricted confidence and support of said Melish Association in the prosecution of said claim and represented, alleged and introduced proof to show that the Melish Association was entitled to a lease or permit on the whole of the Border Line claim; that

Tom Testerman, instead of performing his duty as a chosen agent and trusted servant of the Melish Association, which had paid him for his services, betrayed the trust placed in him by the Association in failing to properly present in good faith its claim and had obtained a very valuable property and a large amount of money for himself to the detriment and loss of the trust estate; that he and the said named attorneys, having appeared for the Association as its trusted agents and attorneys, were without right to receive from the Secretary of the Interior personally a lease on any part of the said Border Line claim or the proceeds of well No. 156 located thereon; that contrary to their duties and obligations to the Association, the said Testerman accepted the lease on one acre of land containing well No. 156 and the accumulated production therefrom amounting to the sum of $110,000; that thereafter he wrongfully and unlawfully paid to T. P. Gore $28,000, and to Leslie C. Garnett $12,000 as part of the said sum of $110,000, and assigned to the said T. P. Gore a one-fourth interest and to L. C. Garnett a one-ninth interest each in the one-acre lease awarded him, all of which was contrary to law and the duties and obligations to the Association, and constituted a fraud upon the Association.

Further alleged in such cross-petition that pursuant to a resolution passed by a majority of the unit holders at a meeting of said Association that the Melish Oil Corporation had been chartered under the laws of the state of Delaware, that more than a majority of the units of the Melish Association had been assigned to the new corporation in exchange for its stock and that the assets of the Association, pursuant to the resolution, had been assigned to the corporation.

The cross-petition prayed that a restraining order be granted restraining the defendants Tom Testerman, Elsie E. Wright, M. L. Whelan, and E. J. Boase, from disposing of any units or shares of stock theretofore issued to them or standing in their names, pending final adjudication as to the validity of such units or shares of stock, or from in any manner transacting any business in behalf of the Association; that they be required to deliver to the named officers of the Association all the books, records, files and papers pertaining and belonging to the Association; that certain of the units or certificates referred to in the petition be held void and canceled; that the court decree that the meeting of the unit holders held on January

5, 1926, was valid and that the trustees and officers elected thereat are the duly constituted and acting officers of the Association; that the assignment of the lease and permit to the Melish Oil Corporation be decreed in all respects valid and binding; that the defendant Testerman be adjudged to hold a lease awarded him by the Secretary of the Interior comprising well No. 156, and the accumulated production therefrom in trust for the defendant Melish Association, or its assignee, the Melish Oil Corporation, and that the said Testerman be decreed to have no interest, right, title, or claim in the said lease other than such as he may have by reason of being a holder of valid units in the Melish Association; that the Association have and recover judgment against the said Tom Testerman for the sum of $110,000, and judgment against T. P. Gore and Leslie C. Garnett for the sum of $28,000 and $12,000, respectively, paid them by Tom Testerman, and for general equitable relief.

Tom Testerman and Elsie Wright representing themselves to be president and secretary of the Melish Association, and Tom Testerman, M. L. Whelan, and E. J. Boase, as trustees, filed answer on behalf of the Association, wherein they generally denied the allegations of plaintiff's petition except as to the creation of the Association; alleged that there had recently arisen a dissention in the Association by reason of the attempted domination of the board of trustees by its minority members, Green and Adkins, with a portion of the unit holders, who desired to transfer the assets of the Association to a Delaware corporation, which pretended transfer and assignment to such corporation was unauthorized and void, and concluded with a prayer that the court adjudge such answering defendants, with Green and Atkins, to constitute the duly elected and acting board of trustees of the Association; that the court declare the pretended assignment of the permit or lease held in the name of the Association to the Delaware corporation to be void.

Later, the same parties, Testerman, Wright, Whelan, and Boase, in their official and individual capacity, filed answer to the cross-petition filed by Green and Atkins on behalf of the Association, wherein they alleged that such cross-petition wholly failed to state a cause of action in favor of the pleader as against the answering defendants, and by further pleading denied generally and specifically the allegations of the cross-petition, by reference adopted the answer filed to plaintiff's petition, and denied the rights of the parties filing the cross-petition to do so because of the alleged assignment of their interests in the Association to the Delaware corporation.

At a preliminary hearing on the causes and by agreement of the parties, the court appointed a receiver for the assets and property of the Association and other parties, who claimed an interest in the matter in litigation, were by the court directed to be made parties to the action, pursuant to which order and subsequent orders pleadings were filed in the cause by various parties claiming an interest in the matter.

The Burk-Bet Oil Company, through its trustees, filed answer and cross-petition in the action wherein it alleged in part that on May 1, 1919, it made, entered into, and secured from the Melish Association a certain oil and gas lease, a copy of which was attached to the answer, wherein it was recited that the Melish Association was the owner of the Border Line Placer Oil Mining claim containing 160 acres located in Red River and leased and let 80 acres thereof, describing it, to W. F. Quay, who, it was alleged, was trustee of the Burk-Bet Oil Company, on condition and upon the agreement that he, Quay, the second party, should within a certain period of time commence drilling operations on the described tract and develop the same for oil and gas. The agreement also contained the following specific language:

"It is further stipulated and agreed that said second party shall receive and accept in full compensation for each well drilled under this contract on said part of said claim five-sixths of the production from said well, and shall deliver unto said first party in the pipe line, or in the tanks furnished by first party in the neighborhood, which first party may direct free of all cost its said equal one-sixth of any and all production from each well drilled by said second party under this contract."

It was alleged that pursuant to such agreement the Burk-Bet Oil Company, or those in its behalf, proceeded to develop the described acreage for oil and gas by drilling a well thereon at an expenditure of $39,000, and discovered oil in paying quantities on or about September, 1919; that it was enjoined by the courts of the state of Texas from pursuing any further development, and was forcibly driven off the acreage, and was not permitted to return for several months during which interim the well drilled was flooded and ruined; that after a receiver was appointed for the property by the federal

court, the second party expended an additional sum of $9,000 in the spring of 1920, trying to make the well a producer, but was unable to do so; that the only development of any kind or character or expenditure made towards the development of the lease was that made by the defendant Burk-Bet Oil Company, and Hardenstein and Quay, its trustees, under the agreement set out; alleged that in a certain action instituted by the Melish Association in the district court of Cotton county, Okla., which involved receivership proceedings on the property, that court by judgment ratified, affirmed, and validated in all respects the lease and agreement between the Melish Association and the Burk-Bet Oil Company, which judgment was alleged to be binding and final as against the Melish Association and res adjudicata on the question of the validity of such agreement; further alleged that, under the terms of the agreement, the Melish Association was bound and obligated to defend the title and rights in the lease executed; that under the Act of Congress of March 4, 1923 (42 Stat 1448) the Melish Association applied for lease and permit on the Border Line claim containing 160 acres which included the 80 acres mentioned and described in the agreement between the Association and the Burk-Bet Oil Company, in which application the Association specifically acknowledged and reaffirmed the rights of the Burk-Bet Oil Company in the acreage, and asked that such interest and lease rights be confirmed and protected; further alleged that it was only through and by reason of the development made by the Burk-Bet Oil Company that the Association was able to make any showing whatsoever to entitle it to a lease or permit upon any part of the said Border Line claim, and that the Association applied for and sought to gain the whole 160 acres of the Border Line claim solely upon the work and expenditure done and made by the Burk-Bet Company; that the Burk-Bet Company was advised by the Melish Association of its application for a lease and permit on the described acreage and informed that when the lease or permit was awarded to the Association, it would then permit the defendant to proceed to develop the said land under the conditions of the original agreement between them, and requested the company and those associated with it not to file any claim for the acreage upon the promise that it, the Association, would protect its interest and rights, and that by reason of such promise, the company was induced to refrain from applying for a lease and permit

for itself, and that the Association was estopped by its acts to deny the validity of its lease and assignment to the Burk-Bet Company of the acreage described; alleged that when the lease and permit was issued by the Interior Department to the Melish Association, by its terms, it was made "Subject to any and all rights of the * * * Burk-Bet Oil Company under drilling contracts with said Association," and that the federal government recognized the rights of the answering parties in said lease; alleged that the findings and orders of the Interior Department are res adjudicata as to the Association and validity of the lease held by the Burk-Bet Oil Company; alleged that the Association refused to recognize or comply with the terms of its agreement and prayed that all parties claiming adversely to the defendants Burk-Bet Oil Company and Quay and Hardenstein, take nothing; that judgment be entered enforcing the lease in question, and that the answering defendant be permitted to develop the 80 acres known as the upper lease under Border Line claim as finally awarded; that the Association be ordered to pay the government royalties out of its one-sixth of the oil produced under the lease, and for general legal and equitable relief.

By way of cross-petition, the Burk-Bet Oil Company alleged that the Melish Association had breached the terms and conditions of the lease, and had failed to defend the title to the acreage as it warranted to do; alleged damages in the matter of expenditures for development of the lease, loss of estimated production or profits from the well on the acreage, and for expenses incurred in the defense of the particular action, and prayed judgment against the Association for the alleged damages.

The Burk-Senator, the Burk-Allied, and Nacogdoches Oil Companies, each filed their several answers and cross-petitions in the action, wherein they alleged and set up certain rights and claims under contracts entered into with the Association, similar in form and terms to that referred to and set forth in the pleadings of the Burk-Bet Oil Company, covering however different acreage, and generally alleged a course of action similar to that taken under the Burk-Bet agreement as hereinbefore set out, and each of the parties prayed appropriate legal and equitable relief. The Burk-Allied Oil Company later, by additional pleadings, prayed judgment on a note executed in its favor by the Association.

The defendant T. P. Gore filed his answer and cross-petition in the action, where-

in he alleged in part that none of the pleadings filed in the cause by any of the parties thereto stated facts sufficient to constitute a cause of action in law and equity against him, and answered by general denial and by way of cross-petition, and for a first cause of action alleged that the Association, acting through its duly elected officers, entered into a written contract with him by the terms of which he was employed to represent the Association in the case of Oklahoma v. Texas, supra, and its interests before all proper committees of Congress in an effort to obtain relief legislation and before the Department of the Interior to secure patents, leases, permits, or other relief; that in consideration of such legal services it was agreed by the Association that it would execute and place in escrow an oil and gas lease in favor of the answering defendant embracing 80 acres of one-eighth of the total acreage comprised in the Border Line, Tiger, Lucky Spot, and Black Jack claims, and further alleged that he had expended much time, effort and money in complying therewith, and prayed that the contract be specifically enforced, and that he be awarded a lease or assignment to one-eighth of the total acreage awarded to the Association under departmental leases and permits.

For a second cause of action, he alleged that, at the time the contract referred to in the first cause of action was entered into, there was a mutual mistake of law by the parties thereto as to the validity of the placer mining claims then asserted by the Association, and, if the relief prayed for in his first cause of action be denied, that in law and equity an implied contract arose between the parties whereunder the defendant agreed to perform the services and the Association agreed to pay him a reasonable compensation therefor; alleged that his services were reasonably worth the sum of $100,000; prayed judgment therefor, and for all other legal and equitable relief.

Leslie C. Garnett filed an answer and cross-petition in the cause wherein he alleged that, in July, 1924, and at a subsequent date, he was employed by the Association through its president, by and with the consent of the trustees, to represent the Association before the Secretary of the Interior in the matter of obtaining certain leases and permits on the acreage and lands involved, specifically denied that he had betrayed any trust placed in him by the Association, or obtained any property or money to the detriment or loss of the Association, admitted that he had been paid $500 to apply on his fee; alleged

that a reasonable compensation for his services was the sum of $20,000, and prayed judgment for such sum less the $500 previously paid him.

The Melish Association filed replies to the various answers and cross-petition of its several codefendants.

The cause proceeded to trial before the court who rendered judgment on May 12, 1927, wherein, as shown by journal entry of judgment, the court found against the plaintiffs Burt and Stuard, and denied their plea to dissolve the defendant Association, and sell its property and assets, and no appeal was taken therefrom by such plaintiffs.

The court further found and decreed in part than the annual and special meetings of the unit holders and trustees of the Association, held on the 5th and 11th days of January, 1926, were lawful; that P. W. Raemer, H. D. Green, J. G. Price, and A. Atkins were the respective officers of the Association; that the said Green, Raemer, Price, and Atkins, P. W. Cress, and C. H. Hyde, were its trustees; further, that at and prior to the time the defendant Tom Testerman obtained a lease and award from the Secretary of the Interior of well No. 156, he was the general manager, president, and trustee of the Association, and T. P. Gore and Leslie C. Garnett were attorneys for the Association, and were prosecuting an application and claim before the Interior Department for and on behalf of the Association for the Border Line claim within the boundary of which was included well No. 156; that the award to Tom Testerman carried with it accumulated funds amounting to about $110,000, one-fourth of which, or approximately the sum of $28,000, was received by T. P. Gore, and approximately $12,000 received by Leslie C. Garnett; that the said Testerman purchased from F. F. Moore for the Association an outstanding contract and claim for the amount of $3,150, for which the said Testerman and Elsie Wright issued or caused to be issued 315 units of the Association; that he, Testerman, while such president, general manager, and trustee, filed with the Interior Department a declaration of interest in the Texas Strike claim based in part on the Moore assignment; that the said Gore and Garnett acted as the attorneys for Tom Testerman before the Interior Department; found that the said named parties could not in good conscience retain the lease and funds so obtained under the award of the Secretary of the Interior, and adjudged and decreed that the Association have and recover

from Tom Testerman the sum of $66,850, which was the sum retained by him from the award after paying the balance to his codefendants Gore and Garnett; and adjudged that the Association have a lien upon all units in the name of Tom Testerman on the books of the Association for the satisfaction of said judgment, and the said Testerman' was ordered and directed to surrender to the clerk of the court the original certificates of units shown in his name on the books of the Association, and directed that they be sold as on execution for the satisfaction of the judgment, provided the same be not satisfied within ten days.

Decreed that the defendants T. P. Gore and Leslie C. Garnett take nothing in their cross-action, and that the costs arising thereon be taxed against them.

Further directed that the defendants Testerman, Gore and Garnett execute an assignment to the Association of all their interest in the lease, including well No. 156, awarded by the Secretary of the Interior to the defendant Testerman, and, in the event of their failure or refusal to execute the same, that, then and in that event, the decree should operate as an assignment of their interest, such assignment to be subject to the approval of the Secretary of the Interior, and in the event the Secretary of the Interior did not approve such assignment, that then that part of the judgment and decree relating to such assignments and transfer should be inoperative.

The trial court further found that the Association had ratified and confirmed the leases and contracts between it and the Burk-Bet, Burk-Senator, Burk-Allied and the Nacogdoches Oil Companies, or their assignors, as alleged in their pleading, and that the same were in force and effect to the extent that said companies were authorized to operate oil and gas leases on so much of the territory covered by the leases and permits granted to the Association by the Secretary of the Interior as is embraced and described in the contracts or leases between the said named oil companies, or their assignees, and the Association, and that they, the companies, pay to the United States out of the production from the wells, the royalty provided for in the leases and permits awarded by the Secretary and to the Association one-sixth of the remainder.

Further ordered and directed that out of the sum of $52,000 paid by the Secretary of the Interior to the receiver appointed by the court, the same being the proceeds from what is known as the Burk-Senator well, there should be paid first the expenses of the receivership including the fees of the receiver and his attorney, and the remainder should be divided, one-sixth to the Association and five-sixths to the Burk-Senator Oil Company, less a deduction of the actual costs of drilling certain wells, the Burk-Senator Oil Company to be reimbursed by any of the other contractees or lessees on whose leases wells have been drilled by the receiver.

Judgment was granted the Burk-Allied Oil Company against the Association for the sum prayed for and found due on promissory note sued on. Further found that certain units of the Association issued to E. Wright and Tom Testerman were illegally issued, but denied cancellation of the same because of failure of the Association to timely object thereto, and because the units had passed into the hands of innocent purchasers.

Further adjudged and decreed that the purported transfer and conveyance of the property of the Melish Association to the Melish Oil Company, the Delaware corporation, was null and void.

The Melish Association, Tom Testerman, T. P. Gore, Leslie C. Garnett, Burk-Bet, Burk-Senator, Burk-Allied, and the Nacogdoches Oil Companies filed motions for a new trial, which were denied, and they have filed in this court, together with case-made, their respective petitions and cross-petitions in error.

We will first consider the appeal of plaintiff in error, Tom Testerman. His first assignment of error presented and argued is directed at the cross-petition of the Association, it being contended that the same, together with the trial amendment thereto, wholly failed to state a cause of action against him.

Objection is made to the cross-petition of the Association on the ground that it fails to set out the findings of fact, or evidence on which the judgment or award of the Secretary of the Interior was based, and failed to allege sufficient facts to show that the lease would have been given the Association had it not been awarded the plaintiff in error. In support of the contention, the cases of King v. Thompson, 3 Okla. 644, 39 Pac. 466; Baldwin v. Keith, 13 Okla. 624, 75 Pac. 1124; Quinby v. Conlan, 104 U. S. 420, with other cases, are cited. We find the cases quoted from involved title to real estate acquired by patent from federal government under its homestead laws; no fiduciary relation ex-

isted between the plaintiff and defendant in those cases as in this case, and we do not consider them applicable to the present action except in the statement of some of the general principles of law which do not relate to the sufficiency of the petition. It is also said that the allegations as to fraud state only conclusion. We think sufficient facts are pleaded from which fraud may be inferred. Concordia Fire Ins. Co. v. Wise, 114 Okla. 254, 246 Pac. 595.

Plaintiff in error presented no motion to make the cross-petition more definite and certain. There was incorporated in the answer filed by the plaintiff in error to the cross-petition a plea or allegation in the nature of a demurrer, wherein it was alleged that the cross-petition failed to state facts sufficient to constitute a cause of action against the answering defendant. We do not find in the record where the plaintiff in error presented any demurrer or challenged the sufficiency of the cross-petition other than by the allegation in his answer, until and at the close of the evidence on behalf of the cross-petitioner, he then interposed a general demurrer to the petition, also to the sufficiency of the evidence. The cross-petition alleged the invalidity of certain units or shares in the Association issued to or standing in the name of the defendant Testerman, and asked for their cancellation; also prayed for other relief against him which did not involve the award or decision of the Secretary of the Interior; and for that reason, if for none other, we think no error is shown in the action and ruling of the court in failing to sustain the general objections made to the cross-petition of the Melish Association.

The established rule is that a petition challenged by general demurrer should be liberally construed in favor of the pleader with a view to substantial justice between the parties, and if any facts are stated therein which entitle the pleader to any relief, the demurrer should be overruled. Dies v. Bank, 100 Okla. 205, 229 Pac. 474. Schlingman v. Wells, 122 Okla. 275, 254 Pac. 716.

It is further urged that the cross-petition was defective in that the Melish Association was without authority to maintain the action without joining the lessor, the United States, as a party, and that no action affecting the validity of the lease or rights thereunder held by the defendant Testerman could be maintained, citing in support thereof the case of Wilson v. Elk Coal Co., 7 Fed. (2d) 112. An examination of that case shows the plaintiff sought to establish a preference right and secure patent to coal lands owned by the United States under a certain statute while the defendant held a lease on a portion of the land under a different act or statute, and it was held that the court was without jurisdiction to grant relief. There was no fiduciary relation existing between the parties, their interests were adverse, and it appears the plaintiff was attempting to establish title to the property without first establishing that right through the general land office as provided by the statute under which he claimed. We do not consider the issue decided in that case to be analogous to the issue or facts involved in the instant case. That case, however, refers to the case of Williams v. United States, 138 U. S. 514, 34 L. Ed. 1026, in which latter case the contention was made that the action could not be maintained because the state of Nevada, who held the legal title to the property, was not made a party, but it was held that a court of equity had jurisdiction to divest either of the adverse title holders, referring to Williams and the state, in a separate action. The case of Hodgson v. Federal Oil Development Co., 5 Fed. (2d) 442, is also cited by plaintiff in error on this point, in which case the plaintiff sought to have the lessee declared trustee for him of an interest in the lease as a cotenant, but the court held there was no sufficient fiduciary relation shown between the parties. The question of parties or pleading was not the decisive issue there.

It is stated by the plaintiff in error that the lease in question shows on its face that the lessees would have to show themselves satisfactory to the Secretary; that the relation created thereby was contractual in its nature. The lessee, Testerman, acquired the lease, as we view it, not because of his personal qualifications, but because he was deemed to have come within the terms of the relief act as assignee of E. F. Moore, who was found to have made development on the acreage within the terms of the Relief Act. The Melish Association was awarded other leases, and it could not well be said that it did not meet the suggested qualifications the same as did the plaintiff in error.

Even if it should be conceded or determined that the cross-petition of the Association was insufficient to state a cause of action against the defendant Testerman, then if the evidence be found sufficient to sustain or justify the judgment appealed from, the pleading might be amended or considered amended to conform to the facts established. Kinney v. Vernor, 136 Okla. 166,

276 Pac. 750; Badger v. Dukes, 134 Okla. 25, 272 Pac. 414.

The next assignments of error presented and argued by the plaintiff in error, Testerman, relate to the right or jurisdiction of the court to enter any judgment involving the lease or funds awarded by the Secretary to plaintiff in error, it being asserted that the judgment of the trial court relating thereto amounted to an attempt to substitute the judgment of the court for that of the Secretary of the Interior. It being argued that, while the title to the land covered by the lease remained in the United States, the award made by the Secretary was final and binding on all parties; that the action of the Secretary under the provisions of the Relief Act involved the exercise of his official discretion in the discharge of administrative powers, and that his decision and judgment is not reviewable by the courts. There is cited in support of the contention, King v. Thompson, and Baldwin v. Keith, supra, together with a large number of other decisions from this court, as well as the federal courts. The case of Knight v. United Land Association, 142 U. S. 161, 35 L. Ed. 974; Anicker v. Gunsburg, 246 U. S. 110, 62 L. Ed. 603; and Work v. United States ex rel. Rives, 267 U. S. 175, 69 L. Ed. 561, are quoted from as sustaining the contention advanced. The cases cited and quoted from arose under different statutes from that involved in the case now before us, and while they state general principles of law that to some extent are applicable to all actions involving decisions of the Land Office, Secretary of the Interior, or other departments having quasi-jurisdictional powers, yet they do not appear to us to be controlling in the instant case; at least, we do not consider the judgment appealed from to be in conflict therewith. The legislative act involved in the case of Work v. Rives, supra, specifically provided that the decision of the Secretary of the Interior should be final on the claimant while the act under which the award or lease involved in the present action was granted, by section 2 thereof, provides in part:

"Leases and permits under this act may be granted to the assignees or successors in interest of the original locators, or the original claimants in all cases where the original locators or original claimants have assigned or transferred their rights, but when leases or permits are granted to the assignees or successors in interest of the original locators or original claimants, the said leases and permits shall be subject to all contracts, not contrary to law or public policy, between the original locators or original claimants and their successors in interest"

—from which it would appear that the Secretary of the Interior was not required to settle or adjust internal differences or rights between parties having a joint interest or right to any award.

The Secretary of the Interior stated his conclusion on the matter in his decision or award here involved as follows, to wit:

"The act of March 4, 1923, does not authorize me to settle controversies based upon contracts between lessees under this act, and their predecessors or successors in interest, or between joint applicants. The courts have jurisdiction of these matters. The leases to be issued under this act will issue to the persons shown by the application to be entitled to be named in such leases, and despite internal dissensions. there must be, on or before October 1, 1925, in each case, some person or organization qualified to receive the lease and carry out its requirements."

In the recent case of Atchley v. Varner, 138 Okla. 156, 280 Pac. 616, the plaintiff in error there, who was the defendant below, made the contention that the trial court was without jurisdiction to declare a trust in favor of the plaintiff, and take from the defendant any interest in the oil and gas lease which had been awarded to the defendant or his trustee under the provisions of the same act of Congress as is involved in this action. In that case it was said:

"Favorable adjudication of defendant's claim by the granting of a lease to B. under chapter 249, 42 Stat. 1448, did not affect the jurisdiction of the proper court of the state to hear and determine plaintiff's claim."

That case referred to the case of Shea v. Nilima, 133 Fed. 209, 66 C. C. A. 263, from which latter case the following is quoted:

"An agreement between two or more persons to explore the public domain, and discover and locate a mining claim or claims, for the joint benefit of the contracting parties, does not fall within the statute of frauds, and need not be in writing. If, in pursuance of the agreement, one of the parties locates the claim in his own name, he holds the legal title to the interest of the others in trust for them."

The argument made that no action could be maintained against a lessee while the title to the land was held by the United States, and the case cited in support thereof, would not apply or be applicable to the moneys awarded and paid over to the plaintiff in error because the government relinquished all rights and control over the

funds when it paid the same to Testerman, who was subject to the jurisdiction of the trial court. U. S. F. & G. Co. v. Hansen, 36 Okla. 459, 129 Pac. 60; Work v. U. S. ex rel. Lynn, 266 U. S. 161, 69 L. Ed. 223.

"The district courts of this state have jurisdiction to foreclose a mortgage on the interest of the lessee in an, oil and gas lease, on Indian land in the Osage Nation while the land is held in trust by the United States; such action in no wise affecting the title of the Indian owners, and not contemplating an invasion of the province of the Secretary of the Interior to approve or disapprove any transfer of the lease, in case of transfer pursuant to a foreclosure sale.

"Nonjoinder of necessary parties in a foreclosure proceeding is not a jurisdictional defect as to parties before the court, any judgment rendered being merely inoperative as to the parties not joined." McKee, Ex'r., v. Interstate Oil & Gas Co., 77 Okla. 260, 188 Pac. 109.

The judgment involved in this appeal specifically provides that that part of the decree which directs the transfer of the lease held in the names of the .defendants Testerman, Gore, and Garnett should become effective only upon the approval thereof by the Secretary of the Interior; in other words, that part of the judgment and decree is made conditional and subject to the approval of the federal government, in whose name the title to the land is held, and the rights and authority of the Secretary of the Interior in the matter is not sought to be invaded by the court. It was contended in the case of Harrison v. Moncravie, 264 Fed. 776, as is contended and urged in the instant action, that since the decree or judgment of the court in that case was subject to the approval of the Secretary of the Interior, it should not entertain jurisdiction of the matter or enter a decree that would not be conclusive. The court there, in disposing of the contention and in referring to the act in question, said:

"Nor does the fact that the partitions and sales which the tribunals named in the Act of April 18, 1912, adjudge may not be effected until the Secretary of the Interior approves them much disturb our minds. They rest in the, abiding conviction that these decrees will commend themselves to his approbation, and the conclusion is that the court below had plenary jurisdiction to hear and adjudge the issues in this case."

It may be that the decree in the instant case will commend itself to the Honorable Secretary of the Interior; if not, the conditional part thereof remains inoperative.

One of the assignments of error presented in the brief of plaintiff in error, along with the contention and assignment that the trial court was without jurisdiction to transfer an award of the Secretary of the Interior, is that the findings, judgment, and decree, as entered against this plaintiff in error, are not supported by the facts, and therefore contrary to law. We shall examine and refer to some extent to the record and facts in this case to determine whether they warrant or sustain the judgment complained of.

It is said in the case of James v. Germania Iron Co., 107 Fed. 597, that while the decisions of the Land Department are quasi jurisdictional, impervious to collateral attack and presumptively right, yet, its judgment and conveyance does not conclude the rights of claimants, it being stated in the body of the opinion:

"He may avoid this decision, and charge the legal title derived from the patent which they issue with his equitable right to it on either of two grounds; (1) That upon the facts found, conceded, or established without dispute at the hearing before the department, its officers fell into an error in the construction of the law applicable to the case which caused them to refuse to issue the patent to him, and to give it to another, * * * or (2) that through fraud or gross mistake they fell into a misapprehension of the facts proved before them, which had the like effect (Gonzales v. French. 164 U. S. 338, 342, 17 Sup. Ct. 102, 41 L. Ed. 458)."

The record in the case before us discloses that the plaintiff in error, Tom Testerman, was one of the promoters of the Melish Association, and its activities towards the acquisition of mineral rights in the territory involved were largely due to his efforts. He was, at and prior to the award to him of the lease here involved, the field manager in charge of the properties of the Association, later its president and trustee, and while the active head of the Association was supported in his management of the affairs thereof by a majority of its trustees and apparently received the confidence and support of its unit holders and those associated with him, and was accorded a wide latitude in the management of the affairs of the Association. Upon passage of the Relief Act in, March, 1923, he took an active personal part in the presentation of the claims of the Melish Association arising under the provisions of the Relief Act. He spent considerable time in the city of Washington at the expense of the Association and employed L. C. Garnett, one of the parties to this suit, to represent the Association before the Department of the Interior and paid him a re-

tainer fee of $500 out of the funds of the Association; also employed the same counsel to represent him personally in presenting his claim in the Texas Strike claim.

In the year 1919, one E. F. Moore obtained a contract or lease from an association referred to as "The Texas Strike Claimants" to drill a well on their location, but, through mistake, made a location on the acreage and territory claimed by the Melish Association, on what is described as the Border Line claim, the east line of the Texas Strike and the west line of the Border Line claims being the same. When it was discovered that the driller, Moore, had probably made a mistake in locating the site of his proposed well, the plaintiff in error here, Testerman. who was then looking after the claims of the Association and possibly held some interest in the Texas Strike claim, proposed and agreed with Moore that he proceed with the drilling of the well as located, and if it should prove to be on the acreage claimed by the Melish Association, on its Border Line claim, that then the Melish Association was to have a similar location on the Texas Strike claim, and with that understanding Moore proceeded to drill his well to a depth of some 90 feet until he was dispossessed by other claimants through force or restrained by a Texas court. Thereafter, in February, 1921, while the plaintiff in error, Testerman, was in the employment of the Melish Association as field manager looking after its property, although not an officer of the Association, he acquired an assignment from E. F. Moore of all the rights and interest in the contract held by Moore with the Texas Strike claimants, including his rights in the well which he had attempted to drill; during the same year, and after Testerman had been elected president of the Melish Association, or a trustee, he caused to be issued to himself $3,150 worth of units or certificates in the Association to reimburse him for his expense in acquiring the E. F. Moore assignment, it being testified by him, in substance, that he acquired the Moore assignment with a view of using the same in support of the claim of the Melish Association to the Border Line acreage or claim in case and in the event it should be established that a certain other well supposed to be located on the Border Line claim should prove to be off the Border Line claim.

On May 3, 1923, Testerman filed in the U. S. Land Office a declaration of interest in the Texas Strike claim, and in support thereof referred to the assignment which he held from E. F. Moore, and asserted therein that the Moore well had been drilled on the Texas Strike claim, and asked that his, Testerman's right in the Texas Strike claim be recognized and protected. Six days after filing such declaration of interest, he canceled certificates held in his name in the Melish Association to an amount equal to the sum of $3,150, and in explanation of the cancellation of the units which had been issued for the Moore assignment, he testified that prior to the return and cancellation of the certificates on April 30, 1923, he had submitted a general written report of the affairs and management of the Association at a meeting of the unit holders or trustees, in which he advised them that he was surrendering the certificates because it appeared then that the Moore well was not on the Border Line claim, but on the Texas Strike claim, and that the Moore assignment would not be needed in support of the Association's claim to Border Line acreage, and because some of the trustees or unit holders did not desire to purchase the assignment for the Association.

Well No. 156, which was awarded to the plaintiff in error, Testerman, by the Secretary of the Interior, together with the sum of approximately $110,000 accumulated from production therefrom, was not the well drilled or started by Moore, but was a well drilled near the Moore well by a party by the name of Bass who had dispossessed and ousted Moore from possession of the acreage, but the award to the plaintiff in error, Testerman, appears to have been made to him by reason and virtue of the attempt to develop the acreage by Moore and by reason of the fact that Testerman held the assignment of Moore's rights or interest. Testerman never filed any claim to any part of the Border Line claim, but was supposed to be pressing the claim of the Melish Association to the entire Border Line acreage. When the committee appointed by the Secretary of the Interior, consisting of the Assistant Secretary, Counselor, and others connected with the Department, to hear argument and present recommendations to the Secretary on the various claims of the parties, made its finding and reported that the claim of the Melish Association to the Border Line claim, at least that part on which was located well No. 156, was not supported or established; and further found that the Moore well or development was on the Border Line claim and recommended that the plaintiff in error, Testerman. be awarded the well No. 156, by reason of his holding an assignment of the Moore claim. The plaintiff in error did not then see fit to protest the report and recommendation

232

of the committee, or challenge the correctness of the same, and did not offer to transfer or assign to the Melish Association the Moore assignment or claim which he testified he originally acquired with a view of establishing and supporting the claim of the Association to the Border Line claim. He accepted the award to himself of a valuable portion of the Border Line claim which he was required to use his best efforts in obtaining for the Association and divided the same with the attorneys who were likewise employed to represent the Association.

Two members of the board of trustees of the Melish Association, Green and Atkins, filed a brief or protest with the Secretary against the report or recommendation of the special committee, in which they objected to its findings and recommendations of an award to the plaintiff in error.

One of the attorneys employed to represent the Association, in submitting a memorandum and brief to the Secretary of the Interior after the recommendations of the special committee, stated in his letter of communication that he submitted a brief on behalf of a majority of the board of trustees of the Association, and that they approved of the policy adopted by him of not challenging the recommended awards by the committee, and after referring to the brief filed by the trustees, Green and Atkins, stated that they assumed full responsibility for the theory and comments contained in their brief. He also stated in his letter that he represented both the Melish Association and Mr. Testerman, and, apparently referring to the Association and Testerman and the award of well No. 156, stated:

"So far as the recommended awards are concerned, there is, of course, no conflict of interest between these two claimants."

It is not likely that the protest or brief filed by the minority trustees, Green and Atkins, received the consideration it would have had it been supported or concurred in by the president of the Association and its attorneys, who were officially representing the Association in the matter.

Had the plaintiff in error, Testerman, desired to have we'l No. 156, which was located on the Border Line claim, awarded to the Melish Association instead of to himself individually, he likely could have induced the Secretary of the Interior to have done so by transferring the assignment of the Moore claim to the Association after the report of the special committee and informing the

Secretary of the Interior of all the facts relating thereto.

The case of Lonabaugh v. Midwest Refining Co., 285 Fed. 63, was one where a party holding a gas lease from the state of Wyoming assigned his rights therein to the Midwest Refining Company, or its assignor, and reserved to himself in the assignment certain rights with a provision that the rights so reserved should extend to any renewal of the lease by either of the parties thereto. The assignee applied for a renewal of the lease which was refused by the state, but the state did enter into a working agreement with the assignee whereunder the assignee continued to develop the acreage and the assignor brought suit alleging that under the new agreement he was entitled to the same rights as reserved and retained by him in the old lease under his assignment, which right the defendant denied. The court there in discussing the matter said:

"The plaintiff had the right to rely upon the utmost good faith of the defendant in securing this renewal, and to this extent, at least, the defendant was in the position of a trustee toward the plaintiff. It does not appear that the plaintiff was present or notified of any hearing upon defendant's application for the renewal. Under these circumstances, as before stated, the defendant, in dealing for the lands with the state, was in duty bound to protect the interest of the plaintiff so far as it could. It was in a position to say, when the state denied the application for renewal and proposed a working agreement, that it refused to accept such an agreement, if it were not of such a nature as to permit it (defendant) to financially respond to any rights which the plaintiff might have under a renewal clause. The mere fact that the state, under the circumstances, decided that it would not renew the lease, but would give a working contract to the defendant, partaking in many instances of the same general elements of the original lease, cannot be held to relieve the defendant of its obligation as a trustee for the plaintiff in the premises. If such a construction should obtain, it would leave the door open for the defendant to secretly urge its influences toward the securing of a change in the form of contract for the purpose of relieving it of the burden of plaintiff's claim, or make it possible for the party having in its power the right to grant the lease to arbitrarily, and for the purpose of defeating plaintiff's claim to an interest in a renewal, change the form of its contractual relationship with the defendant. These are simply mentioned as possibilities which might occur, if the defendant were not held to a strict accountability, and if the two instruments, to wit, the original lease and the subsequent agreement, were not analyz-

ed and construed in the light of the relationship which existed between the parties.

"Respecting a fiduciary relationship such as appears from the complaint in this proceeding, counsel for plaintiff has cited a case with a different combination of facts and circumstances, but which has a statement of the abstract principle of law involved, and in which Judge Sanborn, of this circuit, uses the following language:

" 'For reasons of public policy, founded in a profound knowledge of the human intellect and of the motives that inspire the actions of men, the law peremptorily forbids every one who, in a fiduciary relation, has acquired information concerning or interest in the business or property of his correlate, from using that knowledge or interest to prevent the latter from accomplishing the purpose of the relation. If one ignores or violates this prohibition, the law charges the interest or the property which he acquires in this way with a trust for the benefit of the other party to the relation, at the option of the latter, while it denies to the former all commission or compensation for his services. This inexorable principle of the law is not based upon, nor conditioned by, the respective interests or powers of the parties to the relation, the times when that relation commences or terminates, or the injury or damage which the betrayal of the confidence given entails. It rests upon a broader foundation, upon that sagacious public policy which, for the purpose of removing all temptation, removes all possibility that a trustee may derive profit from the subject-matter of his trust, so that one whose confidence has been betrayed may enforce the trust which arises under this rule of law although he has sustained no damage, although the confidential relationship has terminated before the trust was betrayed, although he had no legal or equitable interest in the property, and although his correlate who acquired it had no joint interest in or discretionary power over it. The only indispensable elements of a good cause of action to enforce such a trust are the fiduciary relation and the use by one of the parties to it of the knowledge or the interest he acquired through it to prevent the other from accomplishing the purpose of the relation. And, within the prohibition of this rule of law, every relation in which the duty of fidelity to each other is imposed upon the parties by the established rules of law is a relation of trust and confidence. The relation of trustee and cestui que trust, principal and agent, client and attorney, employer and employee, who through the employment gains either an interest in or a knowledge of the property or business of his master, are striking and familiar illustrations of the relation. From the agreement which underlies and conditions these fiduciary relations, the law both implies a contract and imposes a duty that the servant shall be faithful to his master, the attorney to his client, the agent to his principal, the trustee to his cestui que trust, that each shall work and act with an eye single to the interest of his correlate, and that no one of them shall use the interest or knowledge which he acquires through the relation so as to defeat or hinder the other party to it in accomplishing any of the purposes for which it was created.' Trice v. Comstock, 121 Fed. 620, 57 C. C. A. 646, 61 L. R. A. 176."

We find that our own court has announced similar principles of law to those above quoted, as shown by the following cases:

"Each member of a partnership must account to it for everything that he receives on account thereof, and is entitled to reimbursements therefrom for everything that he properly expends for the benefit thereof, and to be indemnified thereby for all losses and risks which he necessarily incurs on its behalf.

"Whenever one person is placed in such relation to another, * * * or the act of a third person or of the law, that he becomes interested for him, or interested with him, in any subject or property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interest he has become associated." Chamness v. Collopy, 90 Okla. 71, 215 Pac. 953.

Counsel for plaintiff in error, in his opening statement of the case, in referring to the relationship of the members of the Association, stated:

"The situation of these parties will be somewhat akin to that of partners, if not absolutely that of partners."

"Constructive trusts are such as are raised by equity in respect of property which has been acquired by fraud, or where though acquired without fraud, it is against equity that it should be retained by him who holds it." Rollow v. Taylor, 104 Okla. 275, 231 Pac. 224.

"Constructive trusts are raised by equity for the purpose of working out right and justice, where there was no intention of the party to create such a relation, and often directly contrary to the intention of the one holding the legal title. All instances of constructive trust may be referred to what equity denominates fraud, either actual or constructive, including acts or omissions in violation of fiduciary obligations." Cassidy v. Horner, 86 Okla. 220, 208 Pac. 775.

"As a general rule, a trustee will not be allowed to acquire an interest adverse to the trust, and when he does purchase, in his own name, any interest in or claim against the estate of the cestui que trust, or any

234

other interest in the trust property, such purchase will be held to inure to the benefit of the cestui que trust." Cobb v. Whitney, 124 Okla. 188, 255 Pac. 566.

We are of the opinion that an application of the principles of law and equity, as enunciated in the cases above quoted, to the facts in the instant case, justify and support the judgment of the trial court holding that the plaintiff in error, Testerman, as a trustee of the Melish Association, should be required to account to the Association for the funds received from the award of well No. 156, and to hold the lease for the benefit of the Association subject to the approval of the Secretary of the Interior.

Under other assignments of error, it is urged that that part of the judgment wherein the court decreed the Association to have a lien on the units or interest held by the plaintiff in error in the Association to secure the payment of the amount of the judgment entered in favor of the Association against the plaintiff in error, Testerman, is erroneous and unwarranted in that there was no express contract, statute, or circumstances sufficient to create an equitable lien.

This action was brought in part to determine and establish the interest and rights of the respective parties to the property held by the Association, which Association is conceded by the counsel for plaintiff in error to be a partnership, or in the nature of one, and certainly it would seem that the interest of a partner would be reduced in proportion to the amount which such partner might withdraw from the partnership funds and his interest in the partnership should be made answerable therefor. Section 5322, O. O. S. 1921, in defining the powers of a corporation, includes therein the right to sell the stock or shares of its stockholders or members for the payment of indebtedness to the corporation.

A member of a mining partnership, who advances more than his share of the money to operate or develop oil lands, has a lien on his partner's share to the extent of his overadvancement on final accounting. Kennedy v. Beets Oil Co., 105 Okla. 1, 231 Pac. 508; Barrett v. Buchanan, 95 Okla. 262, 213 Pac. 734; Davison v. Wilson & Co., 127 Okla. 52, 259 Pac. 638.

Under the facts and circumstances of this case, we fail to see why a court of equity may not apply or subject the interest of the partner in the Association in liquidation and satisfaction of the debt due the Association for its funds. We are of the opinion that the judgment against plaintiff in error is supported by the evidence and record.

Propositions numbered 1, 2, 3, 4, 5, and 6, set forth in the brief of the cross-petitioner in error, or plaintiff in error, T. P. Gore, relate to the cross-petition of the Melish Association as filed by Green et al., in so far as it asked any relief or judgment affecting the award or decision of the Secretary of the Interior, and refers to the nature of proof required in such a case and to the question of the right of a person to maintain an action affecting a lease or equitable interest where the legal title in the land is held in the name of the United States; such propositions and the authorities cited in support thereof are similar to those presented and disposed of in the brief and appeal of the plaintiff in error, Testerman, and we do not deem it necessary to again discuss the same here.

We also think the view expressed and our holding on certain of the propositions advanced and the errors assigned in the appeal of the plaintiff in error, Testerman, answers and disposes of similar issues and contentions raised in the appeal and brief of the plaintiff in error herein, Leslie C. Garnett.

The seventh proposition presented and argued in the brief of T. P. Gore is to the effect that he is entitled to retain as a fee for his services, for the recovery of well No. 156 and the moneys that went with it, the sum of $28,000 paid him therefrom by his codefendant Testerman, together with assignment of an interest in the well, regardless of who should be adjudged the rightful owner of the lease and the funds.

The cases cited by him in support of such proposition show that a person, who, in good faith, renders services in the recovery or protection of property under a misapprehension of the true ownership thereof, is entitled to recover a reasonable compensation for such services. Such rule does not appear to have been denied in this action. The Melish Association makes no objection to the judgment allowing the attorneys, Gore and Garnett, to retain as fees the sums received by them from the plaintiff in error, Testerman, but do challenge the good faith and action of such attorneys in their conduct in representing the Association and in accepting a portion of the award from the plaintiff in error, Testerman, and in support of the judgment rendered and in response to the argument of the attorneys in their appeal, calls attention to the case

of Roxana Petroleum Co. v. Goldrick, 113 Okla. 298, 242 Pac. 228, in which case the rule announced in 21 R. C. L. 825 is quoted with approval, a portion thereof is a follows:

"He will be required to account to his employer or prinicpal for any gift, gratuity or benefit received by him in violation of his duty, or any interest acquired adverse to his principal without a full disclosure, though it does not appear that the principal has suffered any actual loss by fraud or otherwise."

See, also, Board of Com'rs of Okfuskee County v. Hazelwood, 79 Okla. 185, 192 Pac. 217; United States v. Carter, 217 U. S. 226, 54 L. Ed. 769; Osterling v. Rose (Pa.) 133 Atl. 374.

Since we find the decree of the trial court correct in adjudging the plaintiff in error, Testerman, to have received the moneys from the award and the lease thereunder as trustee for the Association, the only other question necessary to be discussed and determined in the appeal of the cross-petitioner Gore, also that of Leslie C. Garnett, is whether the amount allowed them for their services under contract or quantum meruit basis was sufficient and supported by the record and the evidence. We are of the opinion that under the record the contract pleaded by the cross-petitioner in error, Gore, is impracticable of being enforced and without the necessity of discussing its legal effect, or its validity, we are of the opinion that his right of recovery and basis for a fee in the matter is to be determined upon what would be a reasonable fee or compensation for the services rendered under all the facts and circumstances.

At the time Mr. Garnett was employed by the president of the Association, Testerman, to represent the Association, he was paid from the funds of the Association the sum of $500; later, after the award of well No. 156, he, Garnett, was paid, or received from the moneys and funds derived from the production of oil from such well, the same being paid or assigned to him by Testerman, the sum of approximately $11,000, and the other counsel, Gore, received from the proceeds of such well from the same source approximately the sum of $28,000.

The chief witness relied upon by Messrs. Gore and Garnett to establish the reasonableness of their claims and amount of fees for legal services due them, based his estimate of the amount due largely upon a percentage basis, varying from 15 per cent. to 25 per cent. of the value of the property recovered or awarded. The trial court, in discussing the question of attorneys' fees and the value of the developed property, stated:

"Putting the wildest figure on it, as to the average oil development, it is not worth over $100,000 and is worth much less. * * * And without any reflection whatever, I refuse to grant them any further judgment, upon the grounds they have been generously paid for their services, and all their contracts call for. * * * "

By decision of this court and from others is has been said that expert testimony of attorneys as to the value of legal services is not necessarily controlling upon the court or jury.

"The opinion of witnesses as to the value of services of attorneys is not conclusive upon the jury; and, notwithstanding such opinion, the jury may find such value to be less, within the bounds of reason." Colley v. Sapp, 44 Okla. 16, 142 Pac. 689.

In McDougal v. Black Panther Oil & Gas Co., 277 Fed. 701, it is stated:

"This court, as well as the trial court, may be considered experts upon the value of legal services, 6 C. J. 763, note 24 and citations."

We are of the opinion that the judgment of the trial court, in so far as it relates to the attorneys' fees allowed or permitted to be retained by the cross-petitioners in error, Gore and Garnett, is reasonably supported by the evidence, and conclude that no error is shown in the judgment from which they appeal.

The Melish Association filed its motion for a new trial in this cause, and upon denial of the same gave notice of appeal and has filed herein its petition or cross-petition in error, and in the first part of its answer brief to that of the cross-petitioner, Burk-Bet Oil Company et al. has set out some of the assignments of error and argument thereon wherein it is asserted that the trial court erred in holding that the Burk-Bet, Burk-Senator, Burk-Allied, and Nacogdoches Oil Companies acquired or were entitled to any rights under the contracts relied on to operate on any part of the acreage covered by the leases or permits awarded the Melish Association by the Secretary of the Interior, it being contended that such contracts were invalid, and that no rights arose therefrom such as could be enforced by the courts because the same related to the taking or occupation of public lands in

violation of the statute; certain cases are cited from this court which announce the rule that no action, either at law or in equity, can be maintained on a contract that is forbidden by law. Cornelius v. Murray, 31 Okla. 174, 120 Pac. 653. A similar contention was made in the case of Atchley v. Varner, supra, which involved a state of facts not entirely different from those involved in the present appeal, in which a similar assignment and question is raised, and it was there held that the contract involving certain rights or interests which had been entered into prior to the Relief Act herein referred to was not void. The contract between the Association and the companies agreeing to drill on the acreage and develop the same for oil or gas was unenforceable prior to the Relief Act of March 4, 1923, but after the government saw fit by legislation in a manner to validate the acts of the parties and recognize their equitable rights in the property referred to in the contract, and in the leases and permits granted and awarded the Melish Association specifically recognized and provided therein that the same were subject to the rights of the respective named companies, then the Association cannot on the one hand accept the benefits thereof and on the other deny the obligation and the equitable rights arising under the contract with the various named companies. We agree with the expressions of the trial court, to the effect that it would be inequitable and clearly unjust to permit the Association on the one hand to recognize its agreements with the companies and use them in obtaining from the federal government the awards, and then after receiving the same attempt to deny the rights of those who made it possible for the Associatiton to acquire the leases and permits. A principle of equity is that "He who seeks equity should do equity," and, as we view it, counsel for the Association, in their argument, overlook equitable and legal rights of the oil companies under the facts shown.

We are unable to agree with the contention of the Melish Association under its assignments of error presented and argued and find no error thereunder.

The Burk-Bet Oil Company filed herein its cross-petition in error, and contends that the trial court should have specifically granted it, Burk-Bet Company, the right to operate and develop the identical acreage as described and awarded the Melish Association by virtue of the development made by the Burk-Bet Company. In other words, the Burk-Bet Company says that the award by the Secretary of the Interior, of what is described in the journal entry and in the award as the upper lease covering approximately 80 acres, was a finding and award in favor of the Burk-Bet Company and that the trial court could not in any manner vary the award either in the amount or description of acreage on which it, Burk-Bet, held a right to operate, and further that under such finding and award the Melish Association was required to pay out of its one-sixth of the production all of the royalties payable to the lessor, the federal government. We do not deem it necessary to determine in the case of the Burk-Bet Company whether the trial court had the power and right to restrict the Burk-Bet Company to any less or different described acreage from that covered by the award from the Secretary of the Interior and described as the upper lease, because it is not shown and does not appear from the record that the acreage or territory described in the agreement between the Association and the Burk-Bet Company varies or is different from that described in the upper lease awarded the Association, under which lease the trial court held that the Burk-Bet Company had a right to operate to the extent of the land described in its original agreement with the Association. Furthermore, it is stated in the brief of the Burk-Bet Company and evidence is quoted therein showing that the acreage described in its contract with the Association and that awarded the Association by the Secretary of the Interior is essentially the same. Therefore the proposition argued and presented becomes immaterial and involves a principle of law which does necessarily arise under the record and facts shown. On the question raised as to who should pay the government royalties on the oil produced, we are of the opinion that the finding and judgment of the trial court on that question is correct. The agreement under which the Burk-Bet Company operated specifically provided that the Melish Association should receive one-sixth of the production from the wells free of cost, and we find nothing in the award of the Secretary of the Interior or otherwise, as we view it, that would justify the court in holding that the Association should pay out of its share of the production on the remaining five-sixths of the production. The trial court decreed that the royalty to the federal government be first paid out of the production and that the remainder be divided, one-sixth to the Melish Association and five-sixths to

the producing company. It is urged on the one hand by the Burk-Bet Company that the payment of such a large part of the production to the Association would practically prohibit its operating by reason of the heavy expense in the development of the property, that, as between the parties, conceding they are both innocent, the Association, under the facts, should pay the government royalty. It is further contended that it was the intention of the parties originally that the Association should pay any royalty due the government; if such were the intentions of the parties, it is not so specified in their original agreement. On the other hand, it is argued by the Melish Association and supported by figures, seemingly correct, that were the production from the wells to reach a certain amount and the Association compelled to pay all of the royalty due the federal government that it; the Association, would be compelled to pay out or deliver more royalty under a certain possible state of facts than it was actually receiving from its share of the production. We do not think that the facts here presented bring them within or justify application of the rule to the Association that, as between the two parties, the Association was the more to blame for their situation and therefore liable for all royalties required under the acts and decision of the federal government. Ordinarily, equity follows the law and cannot make new contracts or relieve one from the terms of an agreement merely because they appear more burdensome, in the light of later events, than anticipated. We conclude that no reversible error is shown in the record and the judgment appealed from by the Burk-Bet Company should be affirmed.

As to the appeal and assignment of error presented in this court by Burk-Senator Oil Company, Burk-Allied Oil Company, and Nacogdoches Oil Company, it has been suggested in the answer brief of the Melish Association, and the same is set up in answer to the brief and argument presented herein by such companies, that they and each of them failed to file a motion for a new trial within the period prescribed by statute, and therefore, and for that reason, this court should not consider questions sought to be presented by their appeal.

We have examined the record presented in this appeal, and it appears that the findings and judgment of the court was entered on May 12, 1927, and no motion for new trial was filed in the cause by the Burk-Senator, Burk-Allied, and Nacogdoches Oil Companies until June 6, 1927, and no showing is made that such parties were unavoidably prevented from filing their motion for new trial within the time fixed by statute. The errors complained of are those arising at and during the trial of the action; apparently, under the holdings and rulings announced in the following cases, this court cannot consider the matters complained of:

"Section 5035, Rev. Laws 1910, requiring a motion for a new trial to be filed within three days after the verdict or decision is rendered, is mandatory; and, in the absence of a showing that the party filing it has been unavoidably prevented from doing so within the time fixed by statute, this court cannot consider errors occurring at the trial." Ewert v. Wills, 72 Okla. 23, 178 Pac. 87; Ronne v. Hirsh, 71 Okla. 311, 178 Pac. 88.

"Sections 5035 and 5036, Rev. L. 1910, requiring a motion for new trial to be filed within three days after the verdict or decision is rendered, and to be made in writing, are mandatory; and, in the absence of a showing that the party filing said motion has been unavoidably prevented from doing so within the time fixed by statute, this court will not consider errors occurring at the trial." Clark v. Cawdell, 72 Okla. 321, 181 Pac. 285.

See, also, Barrows v. Cassidy, 113 Okla. 114, 239 Pac. 581; Philbrock v. Home Drilling Co., 117 Okla. 266, 246 Pac. 457; Cornish v. Sanders, 132 Okla. 296, 270 Pac. 563.

In view of the rule in such cases, the errors complained of by the last-named companies, and attempted to be presented by their appeal, cannot be considered by this court.

Applying the well-established rule that the findings and judgment of the trial court in an equitable action will not be disturbed on appeal except they be found against the clear weight of the evidence, we conclude and hold that the judgment of the trial court in this case, as a whole, should be and is hereby affirmed.

BENNETT, TEEHEE, REID, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (2) 21 R. C. L. p. 578; R. C. L. Perm. Supp. p. 5076; (4) 26 R. C. L. p. 1322; 3 R. C. L. Supp. p. 1495; 4 R. C. L. Supp. p. 1705; 7 R. C. L. Supp. p. 1929; (5) 26 R. C. L. p. 1232; 5 R. C. L. Supp. p. 1447; 6 R. C. L. Supp. p. 1594; 7 R. C. L. Supp. p. 919; (7) 2 R. C. L. p. 1053: R. C. L. Perm. Supp. p. 607. See "Appeal and Error," 3 C. J. §862, p. 966, n. 36; 4 C. J. §2541, p. 649, n. 36; §2640,

238

p. 723, n. 89. "Attorney and Client," 6 C. J. §353, p. 760, n. 93. "Contracts," 13 C. J. §485, p. 525, n. 37. "Corporations," 14 C. J. §1192, p. 788, n. 82. "Equity," 21 C. J. §184, p. 195, n. 47. "Mines and Minerals," 40 C. J. §407, p. 890, n. 7. "Pleading," 49 C. J. §105, p. 107, n. 28; §489, p. 389, n. 33; §648, p. 490, n. 6; §649, p. 492, n. 14. "New Trial," 46 C. J. §263, p. 296, n. 50. "Trusts," 39 Cyc. p. 169, n. 13; p. 298, n. 31.